A jury found defendant guilty of rape. The court fixed his punishment at life imprisonment and sentenced him accordingly
According to the testimony of the alleged victim, she was an employee of University of Alabama in Birmingham on June 22, 1979, and about 5:00 P.M. that day, as she was leaving work to go home in her automobile parked in the parking lot of the University, the defendant, whom she had not known before, came to the driver's side of the automobile and at gunpoint (a pistol) directed her to move over, which she did, and defendant got in the driver's seat and drove to an apartment building on Birmingham's Southside where he raped her. Thereafter, they returned in the automobile to the parking lot at the University, alighted from the automobile and entered an automobile claimed and operated by defendant, which defendant drove to an isolated area beyond Fairfield, where they both left the automobile and he raped her again on a mattress lying on the ground. They returned to the University parking lot about 8:00 or 8:30 P.M. The victim's testimony continued as follows:
 "Q. Okay. When he let you out of the car what did he do?
"A. He drove on off
"Q. What did you do?
 "A. I got in my car, and I went over to my mother's house
"Q. Where does your mother live?
"A. She lives in Collegeville
"Q. How far would that have been from where you were?
"A. Maybe about 15 minutes
 "Q. When you got to your mother's house was anybody there?
"A. My mother and father were there
"Q. What happened then?
"A. I told them what had happened
"Q. And what did you do after you told them?
 "A. Well, after I had told my mother, I called my husband. He was at work. I called him at work
"Q. Where does your husband work?
"A. He works at. . .
"Q. Did you talk with him?
"A. Yes, sir, I did
"Q. And what happened after you talked with him?
 "A. My mother and father took me home. By that time my husband had arrived home. He had already called the police
 "Q. Did you talk or see any policeman on that occasion?
"A. Yes
"Q. Where did you see policemen?
"A. They came to my home
"Q. Did you have some conversation with them?
"A. Yes, I did
 "Q. After the conversation with the policemen, where did you go?
"A. I went to University Hospital."
The defendant did not testify in the case, and no witness testified on call of defendant. The victim was the only witness who testified as to what transpired between the victim and the defendant on the afternoon and evening of June 22, 1979. She positively identified him as the person who had raped her twice. On cross-examination, she *Page 1057 
was questioned intensively as to whether she ever endeavored to forcibly resist him, escape from him or make any outcry or appeal for help. In answering such questions, she insisted that she feared for her own life and safety and that whatever submission there was on her part was actuated by her fear that he would instantly kill her unless she complied with his orders made while he was armed with the pistol which he constantly threatened to use, until he was about to let her out of the automobile at the parking lot, when he told her that the pistol was not loaded
The issue as to guilt turned almost exclusively upon the question whether there was voluntary consent by the victim, which she stoutly denied, in the light of the absence of physical resistance and related circumstances. No one is in a better position to determine that issue than the jury who observed the witness as she testified. It is not within our province to disturb the verdict, and there is no contention to the contrary
The only issues raised by appellant are stated in his brief as follows:
"I
 "WHETHER REVERSIBLE ERROR OCCURRED WHEN THE STATE WAS ALLOWED TO INTRODUCE EXTRINSIC COLLATERAL EVIDENCE THAT DEFENDANT WAS A VICTIM OF AN ASSAULT WITH INTENT TO MURDER — WHEN SUCH EVIDENCE WAS NOT RELEVANT OR MATERIAL TO ANY ISSUE AT BAR, PREJUDICIAL TO DEFENDANT AND HAD THE COLLATERAL EFFECT OF ILLEGALLY IMPEACHING HIS CHARACTER
"II
 "WHETHER REVERSIBLE ERROR OCCURRED THROUGH THE DISTRICT ATTORNEY'S INTRODUCTION OF AN INVOLUNTARY STATEMENT MADE BY APPELLANT AND TESTIMONY REGARDING PHYSICAL ITEMS BOTH OF WHICH WERE NOT PRODUCED PURSUANT TO A MOTION TO COMPEL DISCLOSURE."
Appellant's argument as to each of the two issues tends to blend in some respects with argument as to the other issue, but we will endeavor to consider the issues separately
As to issue I, there is considerable merit in appellant's contention that there was evidence that "was not relevant or material to any issue" in the case, but we do not agree with the contention that the court committed error prejudicial to defendant in connection with the introduction of such evidence, which constitutes a major part of the transcript, some of it taken on voir dire out of the presence of the jury and the larger part in the presence of the jury
The evidence pertained, as stated by appellant, to the fact that on the day after the alleged rape in the instant case the defendant was shot while in his home by an undisclosed person under circumstances that indicated that defendant was the victim of an assault with intent to murder, and defendant was hospitalized for the injuries received as a result of the assault. On June 25, a Birmingham police officer in the robbery-homicide section of the police department, was assigned the case of the assault with intent to murder defendant; and with an incident report with reference to it he went to the hospital room of defendant and in his discussion with the defendant obtained from the defendant his home address at 106 Cotton Avenue, apartment No. 1. The particular officer had a desk in the police department that was next to a desk of one of the officers who had been assigned for investigation of the complaint by the alleged victim in the instant case, who had not been able to identify the alleged rapist. However, she had described him and the automobile he was driving to the investigating officers and had given them the approximate number of the license tag of the motor vehicle. As a result of the discussions between the officers occupying adjoining desks, officers handling the complaint in the instant case learned that there was an automobile at 106 Cotton Avenue, S.W., *Page 1058 
that answered the description of the automobile the alleged rapist was driving and that it had a tag number approximately the same as that reported by the alleged victim. The transcript does not show clearly when and where the victim first identified the defendant as the rapist, but it is reasonably clear from the transcript that she had become certain in her own mind prior to the trial that defendant was the person who had had the prolonged affair with her on the late afternoon and early evening of June 22
In his argument as to issue I, appellant says in his brief:
 "The record clearly reveals that Appellant did not contest identity which was not at issue. Appellant's defense was consent — therefore, Sgt. Gay's testimony in that regard, (and Sgt. Ballard's) was totally irrelevant, probative of nothing, and highly prejudicial."
In view of all of the evidence in the case, which we are now permitted to review, but which the trial judge was not permitted to consider at the time of his rulings on the admissibility of evidence for the reason that all of the testimony had not been taken at such time, it is difficult for one to see the materiality of, or the necessity for, evidence tending to corroborate the identification of defendant by the alleged victim. Furthermore, the record convinces us that probably if the court and the prosecution had known that defendant was making no point whatever as to the identification of the person who had the affair with the alleged victim and that his "defense was consent" they would have considered it time consuming and of no benefit to the State to go into the details of the corroborative evidence as to identity. Counsel for defendant was well within his right and in the full performance of his duty in not conceding any of the elements of the crime charged and in not conceding that defendant was the person who was with the alleged victim at the time, but as the question of identity was an open question throughout the trial, it cannot be correctly said that the corroborative evidence as to identity "was not relevant or material to any issue" in the case. It was both relevant and material
Appellant's strenuous insistence that he was greatly injured by the introduction in evidence of his being a victim to an assault with intent to murder prompts us to discuss that insistence, even though the fact that evidence is injurious to a party objecting to it does not in and of itself constitute a valid ground of objection. The transcript furnishes little support for appellant's view that the evidence tended to put defendant in an unfavorable light with the jury, which in one portion of his brief he states "clearly spelled out to the jury the prior difficulties with the police department and a bad character for violence." Prima facie, at least, the evidence tended to show that he was the victim, rather than the perpetrator, of criminal conduct. There is nothing in the transcript to indicate the contrary. The transcript is silent as to the other person involved and the cause of his shooting defendant in his home the day after the incident in the instant case. We find no suggestion in the transcript, other than on the sentencing hearing, that defendant had raped other women However, we feel that we should here make it known that which we judicially know is found in Lasalle Minnifield v. State, Ala.Cr.App., 392 So.2d 1288 (1981), in which appellant had been convicted of rape and sentenced to imprisonment for life, and in which the evidence showed that after about 10:30 P.M. on June 22, 1979, the defendant raped twice each of two women. See also, LaSalle Minnifield v. State of Alabama, 542 F.2d 947 (5 Cir. 1976), affirming the denial of a petition for habeas corpus involving another rape. We find much in reported cases as to the matter that gives appellant's counsel concern, but nothing of the kind was revealed to the jury on the trial of the case now before us
Another insistence of appellant is to the effect that some of the evidence relative to defendant's having been shot in his apartment on June 23, 1979, consisted of hearsay evidence Appellant refers expressly to a portion of the testimony of Sgt *Page 1059 
James E. Gay, a witness for the State. We quote the identical part of the transcript that is quoted in appellant's brief on the subject:
"(By M. Cahill to Sgt. Gay)
 "Q: On Monday, the 25th of June, you had this conversation with Mr. Minnifield at the hospital. Did you ever have an occasion to go back to the Crimes Against Persons division in the City Hall, to your office area?
"A: Yes, sir, I did
"Q: And did you have a discussion with Sgt. Ballard?
"A: Yes, sir, I did
 "Q: Did you have a general discussion? Is it normal in your line of work to discuss your cases with your peers in the office?
"A: That's correct
"Q: Shoot the breeze about various cases?
"A: That's correct
"Q: Did you do so in regard to Mr. Minnifield's case?
"A: Yes, I did
"Q: Was his name mentioned?
 "MR. BURTON: Your Honor, we object to anything with regards to whether or not his name was mentioned as hearsay, any conversation that took place between the police officers
"THE COURT: I'm going to overrule. Just the name
"A: Yes
"MR. CAHILL: That's all the questions we have."
It is to be readily seen from the objection of defendant that he was anticipating that the witness would testify as to a conversation between him and the other police officer. In overruling defendant's objection, the court limited the answer of the witness to "Just the name," and the witness complied with the limitation, and State's counsel asked no further questions of the witness at the time. We see no basis for any complaint by appellant. In fact, the unequivocal "yes" answer to the previous question asked the witness, "Did you do so in regards to Mr. Minnifield's case?" was the equivalent of the "Yes" answer to the question to which defendant's objection was made. No error prejudicial to defendant resulted from the court's ruling
A final contention made by appellant pertains to the admission in evidence of the testimony of Sgt. Ballard as to finding some beer cans near a mattress at the isolated place where the alleged victim testified the defendant raped her a second time. The victim had testified that defendant had thrown some beer cans on the ground near the place on the occasion of the rape there. Near the end of the trial, the State endeavored to introduce in evidence beer cans that had been retrieved from the isolated place where the claimed rape occurred. A hearing was then conducted out of the presence of the jury relative to the admissibility in evidence of the beer cans. Immediately upon the commencement of the hearing, the following occurred:
 "MR. CAHILL: Judge, for the record, I guess in the last 24 hours I realized through Sgt. Ballard we have some beer cans. I would apologize to Roger, that I forgot to tell him. Any other conversation we had I related to him we had none
 "THE COURT: I just don't think they are admissible Here you have a motion to produce in which — motion to compel disclosure which I ruled on back in May or sometime. I think it was May. So now the trial is toward the end and the beer cans appear. It is not a question of whether the DA has them. It's a question of whether the DA or the police has them. It's the responsibility of the DA themselves to find out what they got and not just wait and say to the defendant at the last minute, well, here's the beer cans. This can be very damaging
 "MR. CAHILL: We will withdraw going into the beer cans. We'll not make an attempt to introduce them
 "THE COURT: All right. I will instruct the jury to disregard the beer cans."
Immediately thereafter, the jury was returned to the courtroom and the following occurred: *Page 1060 
 "THE COURT: All right. Ladies and gentlemen, insofar as the testimony of this witness is concerned, the Court has ruled that the beer cans and anything having to do with the beer cans is inadmissible and from this witness has nothing to do with the case All right. It's out."
There was no ruling adverse to defendant in connection with testimony as to the beer cans. The court ruled in favor of defendant as to their admissibility in evidence and emphatically instructed the jury that it should disregard all previous testimony with reference to the beer cans. The concluding sentence in appellant's brief:
 "The beer cans did, however, bolster the credibility of the victim's testimony, and Appellant was prejudiced because he was denied an adequate opportunity to be prepared for this kind of damaging and prejudicial testimony."
presents no action of the trial court for us to review. All rulings of the trial court on the subject were in favor of defendant
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court
AFFIRMED
All the Judges concur