SHAW, Judge.
The appellant, C.M., a 15-year-old male, was adjudicated delinquent on the following charges: one count of sexual abuse in the first degree, a violation of § 13A-6-66(a)(1), Ala.Code 1975, with respect to M.U., a five-year-old girl; one count of sexual abuse in the first degree, a violation of § 13A-6-66(a)(l), Ala.Code 1975, with respect to A.T., a four-year-old girl; one count of sexual misconduct, a violation of § 13A-6-65(a)(3), Ala.Code 1975, with respect to M.U.; and one count of indecent exposure, a violation of 13A-6-68(a), Ala. Code 1975. He was committed to the custody of the Alabama Department of Youth Services.
The evidence adduced at the delinquency hearing indicated the following. On April 19, 2003, A.T., M.U., and G.T. were at S.S.’s home in Blount County playing with S.S.’s daughter. S.S. testified that initially she was outside with the girls, but that when her son and C.M. came home from riding bicycles, she went inside the house to clean up. According to S.S., her daughter came inside with her, but A.T., M.U., and G.T. stayed outside to play with a toy gun. After a few minutes, S.S. noticed that the girls had gotten quiet, so she looked out her door to check on them. S.S. testified that she saw C.M. on the ground between two pipes in a vacant lot next to her home, and M.U. straddling one of the pipes. According to S.S., M.U. bent over “towards [C.M.’s] private area” with her tongue sticking out. (R. 52.) Before she could holler at M.U., S.S. said, M.U. leaned toward C.M. again. At that point, S.S. yelled M.U.’s name and M.U. got off the pipe. S.S. testified that C.M. then began “struggling to get his pants fixed. So, he was presentable enough to get up.” (R. 54.) According to S.S., when M.U. came into her house, M.U. was crying and stated that “[C.M.] made me do it. [C.M.] made me do it.” (R. 55.) S.S. testified that when she asked M.U. what C.M. had made her do, M.U. “point[ed] to her mouth and to her privates.” (R. 55.)
M.U. testified that she remembered a time when she was playing with her friends A.T. and G.T. at S.S.’s house. M.U. testified that she was playing outside with a toy gun, that C.M. took the gun away from her, and that C.M. told her he would give it back to her if she would lick his “pee pee.” (R. 21.) M.U. testified that she touched C.M.’s “pee pee” with her hand; that she licked C.M.’s “pee pee” with her tongue; and that C.M. put his hand in her clothes and touched her “pee pee” with his hand. (R. 16-17.) M.U. also testified that she saw C.M. pull A.T.’s clothes down, “put his thing in [A.T.’s] mouth,” and touch A.T.’s “pee pee” with his hand. (R. 18-19.) M.U. identified C.M. in court as the person who had committed these acts. (R. 43.)
Tiffany Dean, a sexual assault nurse examiner at Children’s Hospital in Birmingham, testified that she examined both M.U. and A.T. within 24 hours of the alleged abuse. According to Dean, M.U. had redness and a superficial laceration in her vaginal area which, Dean said, was consistent with M.U.’s allegation that a boy in the neighborhood had touched her, *60 but that there was no evidence of vaginal penetration. Dean said that she found nothing “out of the ordinary” in her examination of A.T. (R. 93.)
On April 24, 2003, both M.U. and A.T. were interviewed by Sue Ashworth, an investigator with the Blount County Sheriffs Department, at the Blount County Children’s Center. The statements M.U. and A.T. made to Investigator Ashworth were reduced to writing and the State introduced both at the delinquency hearing. M.U.’s statement reads:
“My Momma’s name is P[J
“[C.M.] pulled my pants down. [C.M.] is stupid. He was a friend til he pulled my pants down.
“(Child is difficult to understand, so mom came into room to help translate.) “[C.M.] made me kiss his pee pee. I kissed it. He scared me. I tried to tell him no, but he wouldn’t listen to me. He’s strong and big, and I’m little.
“[A.T.] and [G.T.] were there. Just one boy was there, [C.M.]. [S.S.] saw [C.M.] make me kiss his pee pee. [C.M.] touched my pee pee with his hands, with his fingers. He was mean to me and it hurt. [C.M.] said that he was my boyfriend and I thought so. BF [boyfriends] are supposed to touch you on the pee pee — No. (Changes mind about answer.) They aren’t supposed to hurt you. He put his pee pee inside my mouth and told me to lick it.
“[C.M.] made [A.T.] do it too. [G.T.] hid.
“[C.M.] wanted me to touch [A.T.’s] pee pee and I did. And he wanted [A.T.] to touch my pee pee, and she did.
“(We had been in the house and ...) [C.M.] said come outside. He touched me more than one time, more than 2 times. [C.M.] rubbed [A.T.’s] pee pee with his fingers.
“[C.M.] said not to tell. He said I couldn’t tell anyone. He made me afraid.
“[C.M.] could get in trouble when his mom and dad get home.
“[C.M.] kissed my pee pee too. He did that to [A.T.] too. [S.S.] made [C.M.] leave and she locked the door.
“Nothing happened to [G.T.] She looked out and saw us.” .
(C. 49-50.) A.T.’s statement reads:
“I’m 4 years old. [G.T.] and [M.U.] and C[.] and A[.] are in the waiting room. C[.] is [M.U.’s] mom.
“[C.M.] touched my pee pee. When we were over in the pine cones. [G.T.] saw him do that, and she can tell you. [G.T.] and I were outside. [M.U.] was outside too. [C.M.] touched me with his hands and fingers inside my clothes. He touched me and [M.U.]
“[C.M.] didn’t touch [G.T.]. I put my clothes on. He didn’t pull my pants down, he put his hands inside my pants. He just pulled [M.U.’s] pants down. [C.M.] made me touch [M.U.] on her pee pee and made [M.U.] put her mouth on my peepee.
“[M.U.] put her mouth on [C.M.’s] pee pee. I saw [C.M.] put his mouth on her pee pee. He put his mouth on [M.U.’s] pee pee. I saw him pull her pants down. [M.U.] didn’t see him pull mine down. “[G.T.] saw D[.] outside.
“[C.M.] was bad. He got in trouble. He should get in more trouble. I don’t like him, he’s scary cause [M.U.] and I said we hate him because of what he did. “I told my mom and my dad.”
(C. 50.)
I.
The appellant contends that the trial court erred in allowing into evidence A.T.’s *61 out-of-court statement.[1] He makes several arguments in this regard, only one of which was preserved for review.
A.
The appellant argues that A.T.’s out-of-court statement was inadmissible because, he says, (1) it was not shown to possess particularized guarantees of trustworthiness pursuant to §§ 15 — 25—32(2)b. and 15-25-37, Ala.Code 1975; (2) the juvenile court failed to make a determination, on the record and supported by specific findings, that the statement possessed particularized guarantees of trustworthiness as required by § 15-25-38, Ala.Code 1975; and (3) the juvenile court failed to make a determination, on the record and supported by specific findings, that A.T. was unavailable to testify under § 15-25-32(2)a., Ala.Code 1975, as required by § 15-25-38, Ala.Code 1975.
None of these arguments was presented to the juvenile court. Although the appellant objected to the introduction of A.T.’s statement, he did so on the grounds that he had not received the complete statement, and that the statement was not sufficiently corroborated as required by § 15-25-34, Ala.Code 1975. The appellant never argued to the juvenile court that A.T.’s statement was not trustworthy or that the court had failed to make determinations on the record that A.T. was unavailable to testify and that the statement possessed particularized guarantees of trustworthiness.
“ ‘ “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). “The trial court cannot be placed in error on grounds not asserted.... The court was required to pass only upon the ground of the objection specified by the appellant and those not announced are waived.” Johnson v. State, 421 So.2d 1306, 1311 (Ala.Cr.App.1982).’ Riddle v. State, 661 So.2d 274 (Ala.Cr.App.1994).”
Richerson v. State, 668 So.2d 130, 133 (Ala.Crim.App.1995). Therefore, these arguments were not properly preserved for review and this Court will not consider them.
B.
The appellant also argues that A.T.’s statement was inadmissible because, he says, he was not provided with the complete statement. Specifically, the appellant contends that although a written rendition of A.T.’s statement to Investigator Ashworth was provided to him, that written rendition did not include the interviewer’s questions despite the fact that A.T.’s statement was not spontaneous, but was made in response to questions asked by Investigator Ashworth. According to the appellant, “[i]t is patently unfair to the accused, and a violation of § 15-25-35 for the State to fail to include the questions that elicited responses included in the statement that was ultimately introduced in the State’s case.” (Appellant’s brief at p. 12.)
As quoted above, the statement that was introduced into evidence appears to be a transcription of what A.T. said to Investigator Ashworth during the interview on April 24, 2003, at the Blount County Children’s Center, but it does not include the questions that Investigator Ashworth posed to A.T. during the interview. Investigator Ashworth testified that her interview with A.T. was not audiotaped or videotaped. She said that there is a video camera in the interview room that is con *62 nected to a closed-circuit television in the next room where people can watch the interview as it is taking place, but the interview was not recorded. According to Investigator Ashworth, a stenographer sat in the next room watching the closed-circuit television and typed the content of the interview as it was taking place. The stenographer then printed out a copy of what she had prepared and gave it to Investigator Ashworth. The record reflects that the copy of A.T.’s statement that Investigator Ashworth received from the stenographer, 1.e., the copy that was introduced into evidence, is the same as the copy of the statement provided to the appellant before the delinquency hearing. Investigator Ashworth testified that she had no record of the questions she had posed to A.T. during the interview and that, although she had not looked at the stenographer’s computer to determine whether the stenographer had transcribed the questions, she did not believe'the stenographer had a record of the questions either.
The only authority the appellant cites in support of his argument that he was entitled to a verbatim transcript of Investigator Ashworth’s interview with A.T. before A.T.’s statement could be introduced into evidence is § 15-25-35; that section provides:
“The proponent of the statement must inform the adverse party of the opponent’s intention to offer the statement and the content of the statement sufficiently in -advance of the proceeding to provide the defendant with a fair opportunity to prepare a response to the statement before the proceeding at which it is offered.”
(Emphasis added.) Nothing in this statute requires that the interviewer’s questions that elicited the statement from the child be provided to a defendant before the statement can be introduced into evidence. This statute requires only that “the content” of the child’s statement be provided. The- purpose of this statute is to ensure that the defendant is given a fair opportunity to respond to the proposed hearsay testimony. See, e.g., Dilbeck v. State, 594 So.2d 168 (Ala.Crim.App.1991). In this case, the content of A.T.’s statement that the State intended to, and did, introduce into evidence was provided to the appellant before the delinquency hearing; thus, the appellant had adequate notice to allow him “a fair opportunity to prepare a response to the statement.” § 15-25-35. The appellant has cited no other authority, and we have found none, that requires the interviewer’s questions as well as the child’s statement to be disclosed, especially in cases, such as this one, where there is no record of the interviewer’s questions. Therefore, the juvenile court properly overruled the appellant’s objection to the admission of A.T.’s statement on this ground at the delinquency hearing.
II.
The appellant also contends that the evidence was insufficient to sustain his adjudication of delinquency for the two sexual-abuse charges.[2] Specifically, he argues that the State failed to prove forcible compulsion.
“Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by ‘proof beyond a reasonable doubt, based on competent, material!,] and relevant evidence.’ The credibility of-witnesses and the truthfulness of testimony in delinquency proceedings is' for the trier of fact to deter *63 mine. C.T.L. v. State, 599 So.2d 94 (Ala.Cr.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.”
A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision.Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
The appellant was charged with two counts of sexual abuse under § 13A-6-66(a)(1), Ala.Code 1975, which provides that “[a] person commits the crime of sexual abuse in the first degree if ... [h]e subjects another person to sexual contact by forcible compulsion.” Section 13A-6-60(8), Ala. Code 1975, defines forcible compulsion as “[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
In this case, there was no evidence of a threat, either express or implied, that placed M.U. or A.T. in fear of death or serious physical injury. The fact that the appellant took M.U.’s toy gun and refused to give it back to her until she performed the sexual acts is not sufficient to establish a threat that places a person in fear of immediate death or serious physical injury. In addition, although M.U. said in her statement that the appellant “scared” her and “made [her] afraid” (C. 49-50), and A.T. described the appellant as “scary” (C. 50), there is no indication that A.T. and M.U. feared death or serious physical injury. Thus, the question in this case is whether the appellant employed physical force that overcame M.U.’s and A.T.’s earnest resistance.[3]
Issues involving “ ‘consent, force and intent to gratify the sexual de *64 sire of either [party]’ ” are generally questions for the trier of fact. Parrish v. State, 494 So.2d 705, 709 (Ala.Crim.App.1985), quoting Hutcherson v. State, 441 So.2d 1048, . 1052 (Ala.Crim.App,1993). Because the victims in this case were children, the level of physical force and earnest resistance that is necessary to establish forcible compulsion is dependant upon the totality of the circumstances surrounding the assault. See Parrish, supra. As this Court noted in Lee v. State, 586 So.2d 264, 266 (Ala.Crim.App.1991), “[t]he force required to consummate the crime ... is relative, and a different standard must be applied when, as in the instant case, the victim is a child and not a mature woman.” “Earnest resistance” is likewise a relative term, and when determining whether there was earnest resistance, the relative strength of the victim and the defendant, the victim’s age, the victim’s physical and mental condition, and the degree of force employed must be considered. See Richards v. State, 475 So.2d 893, 895 (Ala.Crim.App.1985). “When the issue of sufficiency of the evidence is raised in a case in which the victim is a child, questions involving resistance and force must be viewed in the framework of the child’s age and point of view.” Lee, 586 So.2d at 266.
In Richards, supra, the 12-year-old victim testified that the defendant, her stepfather, got into bed with her, placed his body on top of hers, and pressed her breasts with his hands. He then picked her up and, when she requested that he put her down, he did, but then he got back into bed with her and placed his finger “up inside” her. 475 So.2d at 894. When she protested again, the defendant told her to be quiet. In finding sufficient evidence of forcible compulsion', this Court noted that the defendant employed physical force against the victim by manipulating her body and picking her up. This Court also found earnest resistance on the part of the victim, stating:
“We have no doubt that appellant’s actions constituted physical force, and under the circumstances of this case we conclude that the jury could have found that appellant’s actions overcame the victim’s earnest resistance. We note, in addition to the physical force, that the victim was twelve years old; that the abuser was her stepfather, who overwhelmed her in both size and strength; that he was an authority figure who had ‘disciplined’ her in the past; that he told the victim to ‘be quiet’ during the course of the abuse and further told her not to tell anyone afterwards; that the victim contacted another authority figure at her school the day following the incident. These circumstances affirmatively demonstrate that the force used by appellant effectively overcame the victim’s attempts to resist. The recorded testimony of the victim indicates that she asked to be ‘put down’ and requested that he not continue his actions. These pleas went unheeded and appellant persisted in his actions. We consider that the victim’s actions, under the circumstances, constitute ‘a genuine physical effort ... to discourage and prevent her assailant from accomplishing his intended purpose.’ [State v.] Jones, [62 Haw. 572; 574] 617 P.2d [1214,] 1217 [ (1980) ].”
475 So.2d at 896.
In Parrish, supra, the 12-year-old victim testified that the defendant, her mother’s boyfriend, got into bed with her and sexually assaulted her while holding her down by placing his foot over her leg. At the time of the assault, the victim was ill and she pretended to be sleeping during the ordeal. She did not immediately report the incident to her mother because her mother had ignored her previous com *65 plaints that the defendant had sexually molested her. The Court found the presence of physical force “from the fact that the victim was held down by the appellant, who placed his foot over her leg” and from the fact that the victim had suffered physical injury (she found blood in her panties after the assault). 494 So.2d at 711 (footnote omitted). The Parrish Court also found earnest resistance from the totality of the circumstances of the assault. The Court noted that the appellant was intoxicated at the time of the assault; that the victim was ill and pretended to be asleep “in order to protect herself from the defendant,” 494 So.2d at 711 (emphasis omitted); that the victim was in a “particularly vulnerable situation” because the assault took place in the defendant’s home, 494 So.2d at 710; that the victim was only 12 years old and the defendant was an adult; and that the jury had the opportunity to consider the size and relative strength of the victim and the defendant.
In King v. State, 574 So.2d 921 (Ala.Crim.App.1990), this Court found sufficient evidence of both physical force and earnest resistance for the issue of forcible compulsion to be submitted to the jury where “the four-year-old victim testified that her father, the appellant, pulled her pants down and that she tried to pull them back up; she said she was crying and that her father was pushing her hands away.” 574 So.2d at 923-24.
However, in Rider v. State, 544 So.2d 994 (Ala.Crim.App.1989), this Court held that there was insufficient evidence of forcible compulsion based on the following facts:
“The defendant is the 27-year-old stepfather of the victim. The victim testified that, when she and the defendant were sitting on the sofa alone, the defendant would put a movie on the VCR showing ‘people have sex.’ She testified that as they watched the movie, the defendant ‘would force [her] hand on one of his private spots ... [b]etween his legs.’ (Emphasis added [in Rider].) After the movie, the defendant ‘took [her by the hand] back to the bedroom and touched [her] private part[s] ... [b]etween [her] legs and on [her] chest.’ When this touching occurred, both the defendant and the victim were undressed. The victim testified that the defendant touched her private part with his mouth and that the defendant ‘asked’ or ‘made’ her touch his private part with her mouth.
“This touching began after the victim’s ninth birthday and continued until around her twelfth birthday. The defendant told her not to tell anyone ‘because he would probably go to jail.’ The victim testified that, after each incident, he usually told her he was sorry and promised that it would not happen again.
“When the prosecutor asked the victim if she ‘voluntarily’ performed oral acts on the defendant, the victim did not answer. The victim testified that she tried to imind’ her stepfather because she ‘liked the way he treated [her], like [she] was his only child,’ and she considered him her father. The victim testified that she did not have a father when she was born and when she was ‘a little baby.’ The victim’s mother married the defendant when the victim was seven....
[[Image here]]
' “On cross-examination, the victim testified that she knew ‘it was wrong.’ She was ‘afraid’ to tell her mother and did not know how her mother would ‘react.’ She did not tell her grandmother because she ‘thought it would break her heart.’ She did not tell anyone because she did not want the defendant to go to *66 jail. She stated that the defendant had never done anything to make her afraid of him and that she was not afraid of him.”
544 So.2d at 994-95. This Court found evidence of physical force based on the victim’s testimony that the defendant “ ‘would force [her] hand on one of his private spots ... [bjetween his legs.’ ” 544 So.2d at 994. However, this Court concluded that there was no evidence indicating earnest resistance on the part of the victim because there was nothing to indicate a “ ‘genuine physical effort ... [by the victim] to discourage and prevent her assailant from accomplishing his intended purpose.’ ” 544 So.2d at 996, quoting Richards, 475 So.2d at 896, quoting in turn State v. Jones, 62 Haw. 572, 574, 617 P.2d 1214, 1217 (1980).
In this case, with respect to M.U., we conclude that, when viewed in the light most favorable to the State, the evidence was sufficient to create a question of fact for the juvenile court with respect to whether the appellant employed physical force that overcame M.U.’s earnest resistance. Immediately following the assault, M.U. told S.S. that the appellant had “made” her do it. In her statement to Investigator Ashworth, M.U. stated that the appellant pulled her pants down and “made” her “kiss his pee pee”; that the appellant scared her; that the appellant was mean to her and hurt her; that she had tried to tell the appellant no, but that he would not listen to her; that the appellant was “strong and big and [she was] little”; and that the appellant told her not to tell anyone. (C. 44.) There was also evidence of redness and a laceration in M.U.’s vaginal area that was consistent with sexual assault, and M.U. was only five years old at the time of the crime.
Although, as the appellant points out, there was no evidence formally introduced at the delinquency hearing regarding his age or size, the petition filed against the appellant indicates that he was born in June 1988, which made him 14 years old at the time of the crimes in April 2003, and 15 years old at the time of the delinquency hearing in September 2003. We recognize that the petition itself, like an indictment, is not evidence. However, the juvenile court had the opportunity to observe the appellant’s physical characteristics, including his size and strength, as compared to M.U.’s size and strength, during the delinquency hearing. “ ‘[N]o one is in a better position’ to determine the issues of force and consent than the [trier of fact].” Parrish, 494 So.2d at 710, quoting Minnifield v. State, 406 So.2d 1055, 1057 (Ala.Crim.App.1981)(noting that in its deliberations, the jury had the opportunity to consider the relative sizes of the parties).
In light of M.U.’s young age, we find sufficient evidence of forcible compulsion to sustain the delinquency adjudication. M.U.’s statements that the appellant “made” her perform the acts and that the appellant scared her and hurt her, coupled with M.U.’s physical injuries were sufficient to establish physical force. M.U.’s statement that she tried to tell the 'appellant no, but that the appellant would not listen to her, her description of the appellant as “big and strong” and of herself as “little,” and the fact that the appellant told M.U. not to tell anyone about the assault are sufficient, in light of M.U.’s young age and small size as compared to the appellant, to establish “ ‘a genuine physical effort ... to discourage and prevent her assailant from accomplishing his intended purpose.’ ” Richards, 475 So.2d 895, quoting Jones, 62 Haw. at 574, 617 P.2d at 1217.
With respect to A.T., we are forced to conclude that the State failed to present sufficient evidence of forcible com *67 pulsion. As with M.U., A.T. said in her statement to Investigator Ashworth that the appellant had “made” her .perform the acts, thus establishing physical force. See, e.g., Rider, supra. However, unlike with M.U., there was no evidence introduced that A.T. resisted the appellant in any way. A.T. never indicated in her statement that she tried to tell the appellant no, but was ignored, see Richards, supra; that she attempted to push the appellant away, see King, supra; or that she resisted the appellant’s advances in any other way, see Parrish, supra. Therefore, we have no choice but to conclude, as this Court did in Rider, supra, that the State failed to prove forcible compulsion with respect to A.T.
Based on the foregoing, the juvenile court’s adjudication of delinquency for sexual misconduct and indecent exposure and for sexual abuse in the first degree with respect to M.U. is affirmed; the juvenile court’s adjudication of delinquency for sexual abuse in the first degree with respect to A.T. is reversed and on that charge a judgment is rendered in favor of the appellant.
AFFIRMED IN PART; REVERSED AND JUDGMENT RENDERED IN PART.
McMILLAN, P.J., and COBB and WISE, JJ., concur. BASCHAB, J., concurs in part and dissents in part, with opinion.

. The appellant does not challenge the admission of M.U.'s out-of-court statement.

. He does not challenge the sufficiency of the evidence regarding the sexual-misconduct charge or the indecent-exposure charge.

. We note that the State argues the following regarding the abuse of A.T.:
“Concerning the abuse of A.T., the proof of 'forcible compulsion’ is admittedly less than satisfactory; however, in light of the fact that she witnessed M.U.'s treatment at the hands of C.M., A.T. could also be considered the victim of an implied threat. (C. 50.) Additionally, A.T.’s statement says that C.M. 'made me’ engage in the inappropriate activity. (C. 50.) These two circumstances, when viewed as a whole along with C.M.'s superior size and age, justify the adjudication involving victim A.T.”
(State’s brief at p. 20.) Citing Powe v. State, 597 So.2d 721 (Ala.1991), the State argues that "Powe examined and recognized the possibility that, under certain circumstances, 'an implied threat’ is sufficient to satisfy the 'forcible compulsion’ element of first-degree sexual abuse.” (State’s brief at p. 18.) In Powe, the Alabama Supreme Court held that “[w]hen a defendant who plays an authoritative role in a child’s world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction,” and that “the unique relationship between children and the adults who exercise a position of domination and control over them may be taken into consideration in determining whether the element of forcible compulsion has been established.” 597 So.2d at 728-29. However, in Ex parte J.A.P., 853 So.2d 280, 284 (Ala.2002), the Supreme Court reiterated that its holding in Powe “would apply only to cases involving the sexual assault of children by adults who exercised positions of domination and control over the children.” Because the appellant was not an adult who was in an authoritative position to exercise control and domination over A.T., Powe does not apply to this case.