BASCHAB, Presiding Judge.
The appellant, D.W., was adjudicated delinquent based on two underlying charges of sodomy involving D.W. and A.S., violations of § 13A-6-63(a)(1), Ala.Code 1975.[1] The trial court committed him to the Department of Youth Services for sexual offender treatment. This appeal followed.
A.D. testified that, on the afternoon of August 18, 2007, she left her four-year-old daughter D.W., her three-year-old son T.D., and her six-year-old niece A.S. at her mother’s house with her mother. When she returned approximately three hours later, her mother was not there; her nephew Q.W. and D.W., T.D., and A.S. were outside; and her other nephew, the appellant, was locked in the house.
D.W. testified that she was five years old; that, on the day in question, she was in the living room at her grandmother’s house; and that the appellant put her under the cover, pulled her pants down, and “pulled his wee-wee out and put it in [her] in [her] butt.” (R. 58-59.) She told Q.W., and Q.W. tried to telephone her grandmother, but the appellant hung up the telephone and locked the rest of the children out of the house.
A.S. testified that she, the appellant, Q.W., D.W., and T.D. were at her grandmother’s house watching television on the day in question and that her grandmother left. At one point, D.W. told her that the appellant had put the cover over her and “put [his] wee-wee in [her] butt,” but she did not see it happen. (R. 72.) Afterward, she got under the cover with the appellant, and the appellant “put his wee-wee in [her] butt.” (R. 74.) A.S. also testified that she and D.W. told Q.W. about *956 the incident and that he tried to telephone their grandmother, but the appellant took the telephone. Q.W. then took them outside.
T.D. testified that D.W. and A.S. were sitting in the living room floor at his grandmother’s house and that the appellant “[s]tuck his wee-wee in their privacy.” (R. 49.)
D.W. and A.S. were interviewed at the Prescott House, and the juvenile court reviewed DVDs of the interviews. Likewise, we have reviewed the DVDs of the interviews with D.W. and A.S. In her statement, D.W. said that the appellant did something bad to her while she was in the living room at her grandmother’s house; that her grandmother left; that the appellant was under the cover on the floor; that the appellant pulled her clothes down; that the appellant put his wee-wee in her butt; that the appellant did not say anything to her, and she did not say anything to him; and that it hurt. In her statement, A.S. said that, while she was in the living room at her grandmother’s house, the appellant pulled down her clothes and his clothes and stuck his wee-wee in her butt and in D.W.’s butt.
Q.W. testified that he was eleven years old and that the appellant was his brother. He also testified that, on the day in question, he, D.W., T.D., A.S., and the appellant were in the living room at his grandmother’s house watching television and that his grandmother left and told them to stay in the living room. At some point, D.W. and A.S. started hitting the appellant, who was on the floor under some cover, and he turned his back to pick up a battery. Afterward, the appellant left the room, and D.W. and A.S. told him that the appellant “had stuck his wee-wee in their butt.” (R. 21.) Q.W. testified that he tried to telephone his grandmother, but the appellant took the telephone from him, hung it up, and starting throwing things. He took the other children outside, and the appellant stayed in the house and locked the door.
On cross-examination, Q.W. testified that he was in the living room from the time his grandmother left until D.W. and A.S. made the allegations against the appellant; that he did not see the appellant take his clothes off and did not see the appellant’s penis; that he did not see the appellant stick his penis in the girls’ butts; that he did not see D.W. and A.S. take their clothes off or get under the cover with the appellant; and that he did not see the appellant do anything to D.W. or A.S.
The appellant testified that, on the day in question, his grandmother left him in charge of the other children when she left her house; that he was on the floor with a see-through blanket that covered part of his body; that D.W. and A.S. got on the floor and started hitting him; and that he left the room. He also testified that he did not put his penis in D.W.’s or A.S.’s butt. Finally, he testified that he got angry when he heard the girls accusing him of something he did not do.
The appellant argues that the State did not present sufficient evidence to support his delinquency adjudication based on underlying charges of first-degree sodomy. Specifically, he contends that the State did not establish that he acted with forcible compulsion. We agree.
“A person commits the crime of sodomy in the first degree if:
“(1) He engages in deviate sexual intercourse with another person by forcible compulsion .... ”
§ 13A—6—63(a)(1), Ala.Code 1975. “Deviate sexual intercourse” is defined as
“[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another.”
*957 § 13A-6-60(2), Ala.Code 1975. “Forcible compulsion” is defined as
“[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
§ 13A-6-60(8), Ala.Code 1975.
“ ‘Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based on competent, material!,] and relevant evidence.” The credibility of witnesses and the truthfulness of testimony in delinquency proceedings is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Cr.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.’
“A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995).”
C.M. v. State, 889 So.2d 57, 62-63 (Ala.Crim.App.2004).
In this case, the State did not present any evidence that the appellant used physical force that overcame D.W.’s and A.S.’s earnest resistance. Also, it did not present any evidence that the appellant used threats, either express or implied, that placed D.W. and A.S. in fear of immediate death or serious physical injury. See Ex parte J.A.P., 853 So.2d 280, 284 (Ala.2002) (noting that, in Powe v. State, 597 So.2d 721 (Ala.1991), “[t]his Court made it quite clear that its holding [regarding implied threats] would apply only to cases involving the sexual assault of children by adults who exercised positions of domination and control over the children”). At most, it presented evidence that the appellant put D.W. under the cover and that he pulled down D.W.’s and A.S.’s clothes. Therefore, we are compelled to conclude that the State did not present sufficient evidence of forcible compulsion.
Because the State did not present sufficient evidence of forcible compulsion, we must reverse the juvenile court’s adjudication of delinquency against the appellant based on underlying charges of first-degree sodomy. See Ex parte J.A.P., supra; C.M., supra. However, it appears that the State did present sufficient evidence to support an adjudication of delinquency based on two counts of sexual misconduct pursuant to § 13A-6-65(a)(3), Ala.Code 1975. Accordingly, we reverse the juvenile court’s adjudication of delinquency against the appellant based on underlying charges of first-degree sodomy and remand this case to the juvenile court for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WISE and WELCH, JJ., concur.
McMILLAN and SHAW, JJ., concur in the result.

. The appellant was also charged with first-degree sodomy of T.D., but the juvenile court found that charge not true.