WOODALL, Justice.
A delinquency petition was filed in the Jefferson Juvenile Court, charging J.A.P., a 14-year-old male, with the attempted first-degree rape of his 9-year-old half sister, L.P. The charge was based on allegations that J.A.P. attempted to commit the offense of first-degree rape, as that offense is defined in § 13A-6-61(a)(l), Ala. Code 1975. See also § 13A-4-2, Ala.Code 1975. Following an evidentiary hearing, the trial court found the charge to be true and adjudicated J.A.P. delinquent.
J.A.P. appealed to the Court of Criminal Appeals, which affirmed the judgment of the trial court. See J.A.P. v. State, 853 So.2d 264 (Ala.Crim.App.2001). After the Court of Criminal Appeals overruled J.A.P.’s application for rehearing, this Court granted J.A.P.’s petition for certio-rari review. We reverse and remand.
In its opinion, the Court of Criminal Appeals adequately stated the relevant facts, and the repetition of those facts is not necessary. The delinquency petition alleged, in pertinent part, that “[J.A.P.], a male, did, with the intent to commit the crime of rape in the first degree (Section 13A-6-61 of the Alabama Criminal Code), attempt to engage in sexual intercourse with [L.P.], a female, by forcible compulsion.” (Emphasis added.) Section 13A-6-61(a)(l) provides: “A person commits the crime of rape in the first degree if: (1) He or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion.” (Emphasis added.) Section 13A-6-60(8), Ala.Code 1975, defines “forcible compulsion” as: “Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
On appeal, J.A.P. argued that there was insufficient evidence to support the finding that he had used forcible compulsion in an attempt to engage in sexual intercourse with L.P. However, the Court of Criminal Appeals held that the evidence was sufficient to allow the trial court to infer the element of forcible compulsion, and it affirmed the trial court’s judgment based upon B.E. v. State, 778 So.2d 863 (Ala.Crim.App.2000). Before this Court, J.A.P. argues that the holding of the Court of Criminal Appeals conflicts with its prior holding in Rider v. State, 544 So.2d 994 (Ala.Crim.App.1989).
In Rider, the Court of Criminal Appeals considered whether a 27-year-old defendant had used forcible compulsion when he sexually abused and sodomized his 9-year-old stepdaughter. The court stated the following relevant facts:
“The defendant is the 27-year-old stepfather of the victim. The victim testified that, when she and the defendant were sitting on the sofa alone, the defendant would put a movie on the VCR showing ‘people have sex.’ She testified that as they watched the movie, the defendant “would force [her] hand on one of his private spots ... [b]etween his *282 legs.’ (Emphasis added [in Rider].) After the movie, the defendant ‘took [her by the hand] back to the bedroom and touched [her] private part[s] ... [between [her] legs and on [her] chest.’ When this touching occurred, both the defendant and the victim were undressed. The victim testified that the defendant touched her private part with his mouth and that the defendant ‘asked’ or ‘made’ her touch his private part with her mouth.
“This touching began after the victim’s ninth birthday and continued until around her twelfth birthday. The defendant told her not to tell anyone ‘because he would probably go to jail.’ The victim testified that, after each incident, he usually told her he was sorry and promised that it would not happen again.
“When the prosecutor asked the victim if she ‘voluntarily’ performed oral acts on the defendant, the victim did not answer. The victim testified that she tried to ‘mind’ her stepfather because she ‘liked the way he treated [her], like [she] was his only child,’ and she considered him her father. The victim testified that she did not have a father when she was born and when she was ‘a little baby.’ The victim’s mother married the defendant when the victim was seven. On direct examination, the victim explained her passive conduct:
“ ‘Q. Okay. The things that Robin did to you, why did you let him do those things to you? Why didn’t you scream and yell and scratch him and claw him and all of that? Why did you, you know, just why did you let him do those things to you?
“‘A. Because I thought if I would stop, that he wouldn’t treat me the way he did.’
“On cross-examination, the victim testified that she knew ‘it was wrong.’ She was ‘afraid’ to tell her mother and did not know how her mother would ‘react.’ She did not tell her grandmother because she ‘thought it would break her heart.’ She did not tell anyone because she did not want the defendant to go to jail. She stated that the defendant had never done anything to make her afraid of him and that she was not afraid of him.”
Rider, 544 So.2d at 994-95 (footnote omitted). Regarding forcible compulsion, an element of the offenses of sexual abuse in the first degree and sodomy in the first degree, the Court of Criminal Appeals stated in Rider:
“There are two kinds of forcible compulsion. First, forcible compulsion may be that physical force which overcomes earnest resistance. Second, forcible compulsion may be a threat, either express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
544 So.2d at 996. Although the court found evidence indicating that physical force was involved, it found no evidence of any earnest resistance. Also, the Court of Criminal Appeals stated that “it [was] clear that there [was] absolutely no evidence to support [the] second type [of forcible compulsion].” Id.
In Powe v. State, 597 So.2d 721 (Ala.1991), the defendant had been convicted of first-degree rape of his 11-year-old daughter. The sole issue was whether the evidence was sufficient to support the jury’s finding that the defendant had had sexual intercourse with his daughter through the use of forcible compulsion. The Court summarized the facts relevant to that issue:
“The record in this case reveals the following pertinent facts: The alleged *283 victim, N.S., testified that Willie Powe is her natural father and that sometime during the month of May 1988, he sexually assaulted her. N.S. was 11 years old at the time of the alleged incident. “N.S. stated that the incident took place in her parents’ bedroom when no one, other than N.S. and her father, was at home. N.S. testified that she and her father had been arm wrestling while she was on the floor and her father was on the bed. She testified that at some point her father told her that it was time to take a nap and that he told her to lie on her mother’s side of the bed. N.S. said she did as her father told her, while her father lay on the other side of the bed. Thereafter, N.S. said, Powe told her that he was cold, and she said he told her to get on top of him. Again, N.S. said, she obeyed her father. N.S. further testified that her father physically lifted her up on top of him. She stated that at this point she was lying lengthwise on top of her father.
“N.S. testified that next her father unbuttoned and unzipped her pants, put his hand inside her panties, and touched her pubic hair. N.S. testified, on direct examination, that after her father touched her pubic hair, he then pulled down the hospital-type scrub pants that he was wearing and put his penis inside her vagina. Although this testimony conflicted somewhat with her response to certain questions on cross-examination, N.S. was recalled to the witness stand by the prosecution later in the trial and once again testified that her father did put his penis inside her vagina.
“N.S. testified that after her father had put his penis inside her vagina, he then told her to get up and go and lock the door in the living room, which N.S. did. N.S. stated that she then went back to the bedroom, but that she did not get back on the bed with her father. Rather, N.S. stated, she combed her hair and got ready to go over to her best friend’s house. N.S. testified that before she left her house, her father called her back into her mother’s bedroom and told her that she was ‘acting like a baby.’
“N.S. testified that she had lain on top of her father for about two minutes and that it was about four or five minutes between the time that she got off her father and the time that she left the house. Although N.S. stated that her father did not expressly threaten her before or during the incident, she did testify that she was afraid of her father.”
Powe, 597 So.2d at 722-23. According to this Court, the record in that case “reveal[ed] no evidence that physical force was used on the victim or that the victim was expressly threatened.” 597 So.2d at 726.
In Powe, the parties cited Rider, which this Court described as involving “neither a threat of any kind nor the use of any physical force. Furthermore, there was nothing in the record [in Rider] to show that the sex acts were anything other than voluntary.” 597 So.2d at 726. This Court then distinguished Rider, stating:
“[W]e distinguish the Rider case because we find that the evidence in the present case, unlike the evidence in Rider, merits an analysis of whether, viewing the totality of the circumstances, a jury could properly find that an implied threat was made against the victim sufficient to satisfy the element of forcible compulsion. Such an analysis, however, presents an issue of first impression for the appellate courts of this state.,..”
597 So.2d at 726.
After reviewing cases from other jurisdictions, this Court concluded that the evi *284 dence was sufficient to support a finding of forcible compulsion, because “a jury could reasonably infer that Powe held a position of authority and domination with regard to his daughter sufficient to allow the inference of an implied threat to her if she refused to comply with his demands.” 597 So.2d at 728. That holding was extremely narrow, as this Court clearly emphasized:
“At this point, however, we note that our holding in this case is limited to cases concerning the sexual assault of children by adults with whom the children are in a relationship of trust. The reason for the distinction between cases involving children as victims and those involving adults as victims is the great influence and control that an adult who plays a dominant role in a child’s life may exert over the child. When a defendant who plays an authoritative role in a child’s world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction. If the victim is young, inexperienced, and perhaps ignorant of the ‘wrongness’ of the conduct, the child may submit to the acts because the child assumes the conduct is acceptable or because the child does not have the capacity to refuse. Moreover, fear of the parent resulting from love or respect may play a role as great as or greater than that played by fear of threats of serious bodily harm in coercing a child to submit to a sexual act.
[[Image here]]
“Our holding in this case establishes a mechanism by which the unique relationship between children and the adults who exercise a position of domination and control over them may be taken into consideration in determining whether the element of forcible compulsion has been established. To hold otherwise would be to require a child to be mangled, to see a deadly weapon, or to hear the actual utterance of specifically threatening words before a jury would be authorized to discern a rational fear of violence. Making these criteria absolute would be ignoring reality.”
Id. at 728-29 (emphasis added). This Court made it quite clear that its holding would apply only to cases involving the sexual assault of children by adults who exercised positions of domination and control over the children.
In B.E. v. State, supra, the Court of Criminal Appeals, contrary to the limitations of the Powe holding, extended Powe’s forcible-compulsion analysis and affirmed an adjudication of delinquency based upon the juvenile court’s finding that B.E., a 14-year-old male, had committed first-degree sexual abuse and first-degree sodomy of his half sister, who was 5 years old at the time of the incident. Specifically, the Court of Criminal Appeals failed to acknowledge “that [this Court’s] holding in \Powé\ is limited to cases concerning the sexual assault of children by adults with whom the children are in a relationship of trust.” Powe, 597 So.2d at 728. Therefore, to the extent it conflicts with Powe, we overrule B.E.
The Court of Criminal Appeals’ affir-mance of the judgment of the trial court adjudicating J.A.P. to be delinquent was based solely upon its decision in B.E. Because we are overruling B.E., we must reverse the judgment of the Court of Criminal Appeals and remand this case for an order consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, JOHNSTONE, and HARWOOD, JJ„ concur.
BROWN, J., concurs in part and dissents in part as to the rationale and concurs in the result.
MOORE, C.J., and STUART, J., dissent.