Kenneth Williford was convicted of first-degree rape and first-degree sodomy. The trial court sentenced him to 25 years' imprisonment for the rape conviction and 15 years' imprisonment for the sodomy conviction; the sentences were to run concurrently. The Court of Criminal Appeals, in an unpublished memorandum, affirmed Williford's convictions and sentences.Williford v. State (No. CR-02-1523, April 23, 2004),919 So.2d 1235 (Ala.Crim.App. 2004) (table). We granted Williford's petition for certiorari review to consider whether the decision of the Court of Criminal Appeals conflicts with Ex parteJ.A.P., 853 So.2d 280 (Ala. 2002); Rider v. State,544 So.2d 994 (Ala.Crim.App. 1989); and Parrish v. State, 494 So.2d 705
(Ala.Crim.App. 1985). We affirm the judgment of the Court of Criminal Appeals.
 Facts and Procedural History
Kenneth Williford owned and operated a trailer park in Lee County. S.M., a 14-year-old girl, lived with her family in Williford's trailer park; her parents rented a mobile home from Williford. The evidence at trial indicated that when S.M. returned home from school on November 22, 1999, Williford, who was then in his early forties, approached S.M. and asked if her parents were home. S.M. told Williford that her parents were not home. Williford then told S.M. that her family was going to be evicted from the trailer park because earlier that day S.M. had had a fight with another girl who lived at the park.
S.M. protested, claiming that other residents of the trailer park had participated in fights and similar bad behavior and had not been evicted. Williford told S.M. that she "would have to do something about that" and then told her to wait for him at an abandoned mobile home down the street and to make sure that no one followed her to the mobile home. S.M. testified that she went to the abandoned mobile home and waited there because she "didn't know the outcome or what would happen if [she] didn't" meet Williford at the abandoned mobile home. S.M. waited for Williford *Page 12 
for 15 or 20 minutes before he arrived.
After Williford arrived at the mobile home, he ensured that S.M. was alone and then instructed S.M. to go into a bedroom. Once inside the bedroom, Williford called S.M. a "black bitch" and told her to get on her knees and perform oral sex on him. S.M. got on her knees. Williford put his hand on the back of S.M.'s head, and, S.M. testified on redirect examination, after she resisted, he told her "not to act like she hadn't done this before." Williford then attempted to have anal sex with S.M.; S.M. began to cry.[1] Williford then told S.M. to lie on her back, and he had sexual intercourse with her.[2]
Afterwards, he told S.M. that he would kill her if she ever told anyone about the incident. Williford then left the abandoned mobile home.
As soon as she heard Williford's truck leave, S.M. went to her aunt's mobile home, which was also located in Williford's trailer park. S.M. was crying when she arrived at her aunt's. S.M. was taken to a hospital, where she was examined by Dr. Charles Hagen, the emergency-room physician. Dr. Hagen found no bruising on S.M.'s body, though she did have a fresh nonbleeding hymenal tear, and there was blood in her panties in an area that was consistent with the tear.[3] The emergency-room staff took DNA samples from S.M. The evidence showed that Williford was not excluded as the source of all the DNA samples, although he was excluded as the source of several of them. S.M. testified at Williford's trial that she had had sexual relations with other people before her encounter with Williford.[4] Although S.M. was unable to recall the exact date of those prior sexual relations, she testified that she had not had sex with anyone for about two months before the incident with Williford.
Williford was arrested and charged with first-degree rape, a violation of § 13A-6-61, Ala. Code 1975, and first-degree sodomy, a violation of § 13A-6-63, Ala. Code 1975. At trial, after the State rested Williford moved for a judgment of acquittal. The trial court denied Williford's motion. Williford did not renew his motion at the close of all of the evidence.
A jury convicted Williford of first-degree rape and first-degree sodomy, and the trial court sentenced him to 25 years and 15 years, respectively, in prison. Williford appealed to the Court of Criminal Appeals, arguing, among other things, that the State failed to prove the element of forcible compulsion necessary to sustain either conviction. The Court of Criminal Appeals affirmed Williford's convictions and sentences in an unpublished memorandum. Williford petitioned this Court for a writ of certiorari. We granted certiorari review to consider whether the Court of Criminal Appeals' decision, which affirmed the trial court's judgment convicting Williford of first-degree rape and first-degree sodomy, conflicts with prior decisions regarding the sufficiency of the evidence to support a jury's finding of the element of forcible compulsion. *Page 13 
 Standard of Review "`Appellate courts are limited in reviewing a trial court's denial of a motion for judgment of acquittal grounded on insufficiency.' McFarland v. State, 581 So.2d 1249, 1253 (Ala.Crim.App. 1991). `The standard of review in determining sufficiency of evidence is whether evidence existed at the time [the defendant's] motion for acquittal was made, from which the jury could by fair inference find the [defendant] guilty.' Linzy v. State, 455 So.2d 260, 26[2] (Ala.Crim.App. 1984) (citing Stewart v. State, 350 So.2d 764 (Ala.Crim.App. 1977), and Hayes v. State, 395 So.2d 127 (Ala.Crim.App.), writ denied, 395 So.2d 150 (Ala. 1981)). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Linzy,
supra."
Ex parte Burton, 783 So.2d 887, 890-91 (Ala. 2000).
"The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally
sufficient to allow submission of an issue for decision to the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
 Analysis
Williford argues that his convictions are not supported by sufficient evidence because, he says, the State presented no evidence of "forcible compulsion," a necessary element of both first-degree rape[5] and first-degree sodomy.[6]
Forcible compulsion is defined by statute as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." §13A-6-60(8), Ala. Code 1975. Thus, to prove forcible compulsion on Williford's part the State had to show either (1) that Williford used physical force that overcame S.M.'s earnest resistance or (2) that he threatened S.M., either expressly or impliedly, and that that threat placed S.M. in fear of immediate death or serious physical injury to herself or another person.See Ex parte J.A.P., supra; Rider, supra.
The force necessary to sustain a conviction for first-degree rape or first-degree sodomy is relative. Pittman v. State,460 So.2d 232, 235 (Ala.Crim.App. 1984) ("The force required to consummate the crime [of rape] against a mature female is not the standard for application in a case in which the alleged victim is a child thirteen years of age."), writ quashed, 466 So.2d 951
(Ala. 1985). "[T]he `totality of the circumstances' should be considered in deciding whether there was sufficient evidence of forcible compulsion. . . ." Parrish v. State, 494 So.2d at 713.
In concluding that the evidence was sufficient to support a finding of forcible compulsion, the Court of Criminal Appeals relied on Parrish v. State, supra. In Parrish the evidence showed that Parrish touched a 12-year-old girl's "private parts" while the child pretended to be asleep on a bed in Parrish's house. 494 So.2d at 706-09. Parrish was the boyfriend *Page 14 
of the child's mother. The child testified that Parrish held her down by placing his foot over her leg and that Parrish left the bedroom when she pretended to wake up. 494 So.2d at 707. There was blood in the child's panties, and the Court of Criminal Appeals concluded there was no evidence of any reason for the blood "other than the attack itself." 494 So.2d at 711.
In affirming Parrish's conviction, the Court of Criminal Appeals held that the fact that a 12-year-old girl makes no effort to resist a sexual confrontation beyond pretending to be asleep does not negate the inference that sufficient legal force was used to satisfy the element of forcible compulsion.494 So.2d at 709. The Court of Criminal Appeals also held that when the issue of sufficiency of the evidence is raised in a sexual-abuse case, questions involving resistance and consent must be viewed "`in the frame of the age of the assaulted girl.'"494 So.2d at 710 (quoting Smith v. State, 36 Ala.App. 209, 213,55 So.2d 202, 206 (1951)). There was no evidence suggesting "that the victim requested, encouraged, consented to or otherwise gave permission or sanction to, [Parrish's] actions."494 So.2d at 713. The record did not contain any indication that Parrish could have entertained, at any time, "`any idea or expectation of permissive' sexual contact." 494 So.2d at 713. The Court of Criminal Appeals also concluded that there was no reason for there to be blood in the child's panties, other than Parrish's attack. Considering the totality of the circumstances, the Court of Criminal Appeals concluded that the record showed sufficient evidence of forcible compulsion to support a conviction of first-degree sexual abuse.[7] 494 So.2d at 713. Therefore, forcible compulsion does not exist in a vacuum; rather, it is viewed in light of the surrounding circumstances, such as the respective ages of the victim and the perpetrator, the relationship between them, the circumstances under which the act took place, and any injuries the victim suffered.
Williford argues that the decision of the Court of Criminal Appeals in his case conflicts with its decision in Parrish.
Williford argues that the decision in Parrish relied solely on the Court of Criminal Appeals' determination that there was no explanation offered for the blood in the child's panties other than the attack by Parrish. Williford argues that in his case there was an alternative explanation for the blood found in S.M.'s panties, namely that S.M. had been sexually active before the incident with Williford and that the DNA analysis revealed that Williford's DNA was not the only DNA found on the samples taken from S.M. after the incident.
Although the Court of Criminal Appeals in Parrish did note that there was no evidence indicating a reason for the presence of blood in the child victim's panties other than Parrish's attack, the presence of the blood was only one of seven "significant facts" recited by the Court of Criminal Appeals as the basis for the jury's verdict. The Court of Criminal Appeals in Parrish based its decision on the totality of the circumstances, not, as Williford contends, on a single factor.[8] The Court of *Page 15 
Criminal Appeals considered in Williford's case, as it did inParrish, the totality of the circumstances and concluded that there was sufficient evidence of forcible compulsion.
In this case, as in Parrish, the victim was a young girl with a vaginal injury that caused bleeding. In Parrish there was no evidence indicating a reason for the presence of blood in the victim's panties other than the assault. In this case, the evidence is less clear: the record indicates that Dr. Hagen, the physician who examined S.M., testified that S.M. had a nonbleeding hymenal tear that could have resulted from having sex, using tampons, or "what not." He also testified that the tear was "fresh." The record indicates that there may have been other individuals with whom S.M. was sexually involved around the time Williford assaulted her. The issue of who or what caused S.M.'s injury was properly presented to the jury.
S.M., like the victim in Parrish, did not call out for help or offer vigorous physical resistance to the sexual advances. What constitutes "earnest resistance" depends upon the circumstances. See Pittman v. State, 460 So.2d at 235. Williford was in his early forties and imposed himself on a young girl of 14. Like Parrish, who also imposed himself on a young girl, Williford had no basis for believing that the sexual contact was permissive.
S.M. testified on direct examination that Williford acted with force and that S.M. resisted his sexual advances:
 "Q. [S.M.], tell me what Mr. Williford said.
 "A. He told me to suck his dick and he called me a black bitch.
 "Q. What happened next?
 "A. And he pulled down his pants and put his hand behind my head.
 ". . . .
 "Q. What position were you in?
 "A. On my knees.
 "Q. What happened then? You say [Williford] put his hand on your head? Why was that?
 "A. To make me have oral sex with him.
 "Q. Did you want to do that?
 "A. No, ma'am.
 "Q. Did [Williford] say anything when you resisted him?
 "A. `Don't act like you never done it before.'"
The subsequent testimony revealed that, after S.M. performed oral sex on Williford, Williford attempted unsuccessfully to have anal sex with her. Williford then had sexual intercourse with S.M. On redirect examination, when S.M. was questioned about what she had told a counselor at the Child Advocacy Center, S.M. testified that Williford had forced her head to his penis.
The incident between Williford and S.M. occurred in the bedroom of an abandoned mobile home in a trailer park owned and operated by Williford with no one else present. Williford put his hand on the back of S.M.'s head to force her to perform oral sex on him; S.M. resisted. He told her "not to act like she hadn't done this before," a statement that confirms that he recognized that she was resisting. Williford then attempted to have anal sex with *Page 16 
S.M., and S.M. began to cry. He then had sexual intercourse with her. The Court of Criminal Appeals concluded that the jury could have found forcible compulsion — "[p]hysical force that overcomes earnest resistance" — from the totality of the circumstances. We agree. Accordingly, we cannot conclude that the Court of Criminal Appeals erred in holding, based on the totality of the circumstances, that there was sufficient evidence of forcible compulsion to support Williford's convictions for first-degree rape and first-degree sodomy.
Williford also argues that the Court of Criminal Appeals' decision in his case is inconsistent with its decision in Rider,supra.[9] A jury convicted Rider of first-degree sexual abuse and first-degree sodomy based on sexual acts between him and his stepdaughter. The evidence showed that Rider forced the child's hand onto his penis and that Rider touched her breasts and her vagina. The child testified that Rider performed oral sex on her and that he asked her to perform oral sex on him. She testified that the touching began sometime after her ninth birthday and continued until around her twelfth birthday. When the prosecutor asked the child if she had "voluntarily" performed oral sex on Rider, she did not answer. She testified that she tried to "mind" Rider because she "liked the way he treated [her], like [she] was his only child." 544 So.2d at 995. She further stated that Rider had never done anything to make her afraid of him and that she was not afraid of him.544 So.2d at 995. The Court of Criminal Appeals reversed Rider's conviction on the basis that the evidence of forcible compulsion was insufficient. Considering the totality of the circumstances, the Court of Criminal Appeals held that the evidence was insufficient to support a finding of either physical force that overcame an earnest resistance or a threat, express or implied.544 So.2d at 996. The Court of Criminal Appeals stated that there was no evidence indicating that the child had made any protest or complaint to Rider sufficient to indicate earnest resistance.544 So.2d at 995. Moreover, the State had failed to offer any evidence indicating that the child did not act voluntarily. SeePowe v. State, 597 So.2d 721, 726 (Ala. 1991) ("[In Rider,] there was nothing in the record to show that the sex acts were anything other than voluntary."). The Court of Criminal Appeals stated that "it is clear that there is absolutely no evidence to support [forcible compulsion by threat]." Rider,544 So.2d at 996.
Rider, however, is unlike this case because Rider involved "neither a threat of any kind nor the use of any physical force."Powe, 597 So.2d at 726. Here, in an effort to force her to perform oral sex on him, Williford put his hand on the back of 14-year-old S.M.'s head, and S.M. resisted. He told her "not to act like she hadn't done this before," confirming that he recognized that she was resisting, and he "forced" her head to his penis. Williford then attempted to have anal intercourse *Page 17 
with S.M., and S.M. began to cry. Williford then had sexual intercourse with her, apparently tearing her hymenal ring. We find no inconsistency between the Court of Criminal Appeals' decision in this case and its decision in Rider.
Williford also claims that the Court of Criminal Appeals' decision in Ex parte J.A.P., 853 So.2d 280 (Ala. 2002), supports his argument that the evidence was insufficient to support the jury's finding of the element of forcible compulsion. Unlike Parrish and Rider, which address physical force and earnest resistance, Ex parte J.A.P. addresses implied threat, the second type of forcible compulsion.[10]
In Ex parte J.A.P., J.A.P., a 14-year-old boy, was convicted of attempted first-degree rape of his 9-year-old half sister, L.P. 853 So.2d at 281. The Court of Criminal Appeals affirmed J.A.P.'s conviction, concluding that there was sufficient evidence of forcible compulsion. In affirming J.A.P.'s conviction, the Court of Criminal Appeals relied only on B.E. v.State, 778 So.2d 863 (Ala.Crim.App. 2000), in which the Court of Criminal Appeals held that a jury could reasonably infer that a juvenile held a position of authority and domination over another younger juvenile.
On certiorari review, this Court held that the Court of Criminal Appeals' decision in B.E. improperly extended the forcible-compulsion analysis of Powe to a 14-year-old boy who was accused of sexually abusing a 9-year-old girl.853 So.2d at 284. The Court in Powe had held that the jury could reasonably infer that Powe, as N.S.'s father, held a position of authority and domination with regard to N.S. sufficient to allow the inference of an implied threat to her if she refused to comply with his demands. 597 So.2d at 728. The Court in Powe limited its holding to adult-child relationships in which the adult has dominion and control over the child. 853 So.2d at 284. However, J.A.P. was not an adult; therefore, the jury was not permitted to infer that J.A.P. impliedly threatened L.P. Because the Court of Criminal Appeals relied solely upon B.E. in affirming J.A.P.'s conviction, this Court reversed the judgment of the Court of Criminal Appeals.
Williford states that "[i]n Ex parte J.A.P., 853 So.2d 280,284 (Ala. 2002), the Alabama Supreme Court held: the holding ofPowe v. State, 597 So.2d 721 concerning parental control `was extremely narrow.'" Ex parte J.A.P., however, is inapplicable to this case. Ex parte J.A.P. involved the implied-threat-of-death-or-serious-bodily-injury prong of forcible compulsion. In this case, there was sufficient evidence indicating that Williford used actual physical force to overcome earnest resistance — the other prong of forcible compulsion.
 Conclusion
In this case, the evidence, when viewed in the light most favorable to the State, was sufficient to support the jury's finding that Williford used forcible compulsion so as to support his convictions for first-degree rape and first-degree sodomy. Thus, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The evidence indicates that Williford "was not successful" in his attempt to have anal sex with S.M.
[2] The record does not indicate whether S.M. continued to cry after Williford initiated sexual intercourse.
[3] Dr. Hagen testified that S.M.'s nonbleeding hymenal tear could have resulted from having sex, using tampons, or "what not." He also testified that the tear was "fresh."
[4] S.M. was unable to recall the exact number and names of the people with whom she had had sexual relations before her encounter with Williford.
[5] Section 13A-6-61, Ala. Code 1975, defines the offense of first-degree rape; it reads, in relevant part:
 "(a) A person commits the crime of rape in the first degree if:
 "(1) He or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion. . . ."
[6] Section 13A-6-63, Ala. Code 1975, defines the offense of first-degree sodomy; it reads, in relevant part:
 "(a) A person commits the crime of sodomy in the first degree if:
 "(1) He engages in deviate sexual intercourse with another person by forcible compulsion. . . ."
[7] The definition of the term "forcible compulsion" as an element is the same regardless of whether the offense charged is for first-degree rape, first-degree sodomy, or first-degree sexual abuse. See § 13A-6-60, Ala. Code 1975.
[8]
 "In brief, appellant argues that the State failed to prove a necessary element of the crime, since, according to the appellant, there was insufficient proof that the sexual contact was had by `forcible compulsion.' Appellant argues that the failure of the 12-year-old victim to scream for her mother, `repel the appellant,' or `in any other manner object to appellant's activities' requires that the jury verdict be overturned by this court. However, considering all of the circumstances surrounding the assault, the mere fact that an ill, 12-year-old girl makes `no effort to resist' a sexual confrontation does not negate the inference that sufficient `legal force' exists. Weatherford v. State, 369 So.2d 863, 872 (Ala.Cr.App.), cert. denied, 369 So.2d 873
(Ala.), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979)."
494 So.2d at 709 (emphasis added).
[9] The Court of Criminal Appeals, in its unpublished memorandum, misstates the Rider holding: "In Rider, we concluded that this evidence established forcible compulsion." In fact, the Court of Criminal Appeals had held in Rider that "the totality of the circumstances simply does not support a finding of . . . forcible compulsion which overcame the victim's earnestresistance." Rider, 544 So.2d at 996.
Based on its mischaracterization of Rider, the Court of Criminal Appeals stated that Williford "concedes" his case is similar to Rider, and, thus, concedes that the State proved forcible compulsion with respect to the first-degree-sodomy charge. Williford, however, does not make such a concession. Nonetheless, as we demonstrate, a proper examination of Rider
does not lead to the conclusion that the evidence in this case was insufficient to support a finding of forcible compulsion.
[10]
 "There are two kinds of forcible compulsion. First, forcible compulsion may be that physical force which overcomes earnest resistance. Second, forcible compulsion may be a threat, either express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
Rider, 544 So.2d at 996. *Page 18