941 So.2d 345 (2006)
B.H.
v.
STATE.
CR-04-0506.
Court of Criminal Appeals of Alabama.
May 5, 2006.
*346 Tyrone Townsend, Birmingham, for appellant.
Troy King, atty. gen., and Beth Slate Poe, asst. atty. gen., for appellee.
*347 McMILLAN, Presiding Judge.
B.H. was charged in separate delinquency petitions with enticing a child, a violation of § 13A-6-69, Ala.Code 1975, and first-degree sodomy, a violation of § 13A-6-63, Ala.Code 1975. After an evidentiary hearing, the juvenile court judge found the charges to be true and adjudicated B.H. delinquent. This appeal followed.
The State's evidence tended to show that on January 6, 2004, the mother of the victim saw a movie about a little girl who had been assaulted by a family member. She asked her five-year-old daughter, J.H., if she had ever been touched inappropriately or if she had ever touched anyone inappropriately. J.H. told her mother that when she was at her grandmother's house, her uncle, B.H., who was then 15 years old, called her into his room and asked her to put her mouth on his penis. She said that she complied but then took her mouth off his penis because she thought that he was going to urinate in her mouth. She put her mouth back on his penis when he told her that he would not urinate in her mouth.[1] J.H.'s mother reported what J.H. had told her to the police. On January 9, 2004, Birmingham police detective Cynthia Morrow interviewed B.H. He admitted taking J.H. into his bedroom, pulling down his pants and showing her his penis. He said that he started to make J.H. suck his penis but that he changed his mind and that she did not suck or touch his penis. On January 14, 2004, J.H. repeated essentially the same information she had told her mother to forensic interviewer Cindy Abercrombie at Prescott House. J.H. also reiterated essentially the same facts at trial. B.H.'s mother (J.H.'s grandmother) testified that the victim was not at her house on December 23, 2003, the date stated in the delinquency petition as the date of the offense. She said that the victim visited her only once during December 2003, early in the month, and that B.H. was not at home that day.

I.
B.H. contends that his statement to Detective Morrow should have been suppressed because, he says, he did not knowingly and voluntarily waive his Miranda rights. He argues that he could not execute a knowing and intelligent waiver because he suffers from diminished mental capacity, caused by mild mental retardation, attention deficit disorder, attention deficit/hyperactivity disorder and lead poisoning. He also argues that he did not understand that he was giving up his right against self-incrimination because he did not read the final paragraph of the waiver form and Detective Morrow did not read it to him or explain the significance of his signature.
"Whether a waiver is voluntary, knowing, and intelligent depends on the particular facts and underlying circumstances of each case, including the background, experience, and conduct of the accusedi.e., the totality of the circumstances." Click v. State, 695 So.2d 209, 218 (Ala.Crim.App.1996). "`[T]he fact that a defendant may suffer from a mental impairment or low intelligence will not, without other evidence, render a confession involuntary.'" Youngblood v. State, 656 So.2d 385, 387 (Ala.Crim.App.1993). B.H. attended regular high school classes. Two experts examined him and found him competent to stand trial. The trial judge asked him to read aloud and found his reading to be "very good." There was no evidence indicating that B.H.'s mild mental deficits rendered him unable to execute a *348 knowing and intelligent waiver. See Cleckler v. State, 570 So.2d 796, 801 (Ala. Crim.App.1990) (defendant classified as trainable mentally retarded could have knowingly and intelligently waived his rights).
With regard to B.H.'s claim that he did not understand the final paragraph of the written waiver, Detective Morrow testified that B.H. read the advice-of-rights portion of the form out loud. She said that she helped him with the few words that appeared to give him trouble, that he stated that he understood his rights, and that he appeared to her to understand them. B.H. admitted at trial that he understood that he could have his mother present during the interview and that he did not have to say anything to Detective Morrow. The trial court's finding that a statement is admissible will not be disturbed on appeal unless it is found to be "manifestly contrary to the great weight of the evidence." Williams v. State, 456 So.2d 852, 855 (Ala.Crim.App.1984). Here, the trial court had sufficient evidence to conclude that B.H. had knowingly and intelligently waived his rights.

II.
B.H. also contends that his statement to Detective Morrow should have been suppressed because, he says, it was "coerced." He argues that Detective Morrow stated that "it would keep him out of trouble if he talked to her" and that it would be better to talk to her if he wanted help. He states that she turned the tape recorder off more than once and talked to him while it was not recording.
The audiotape of B.H.'s interview was played at trial; the parties agreed it contained the following statement by Detective Morrow: "I can't help you if you don't talk to me." Detective Morrow testified that she did not recall stopping the tape or recall any conversation that was not on the tape. The juvenile court trial judge noted that she did not hear the lack of continuity that is typical when audiotapes are turned off and turned back on.
"[T]he test of involuntariness of a confession, or other inculpatory statement, is not whether the defendant bargained with the police but whether in his discussions with the police, which may have included bargaining, the defendant's will was overborne by `apprehension of harm or hope of favor.'" McLeod v. State, 718 So.2d 727, 730 (Ala.1998). There is no evidence indicating that B.H. was subjected to threats or intimidation of any kind, and Detective Morrow's taped-recorded comment was insufficient to render B.H.'s statement involuntary. "A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary." United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir.1985), citing United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir.1978).
B.H.'s claim that Morrow made additional statements while the tape recorder was turned off is not supported by the record on appeal. "`[W]here the appellant fails to include pertinent portions of the proceedings in the record on appeal, this court may not presume a fact not shown by the record and make it a ground for reversal.'" Carden v. State, 621 So.2d 342, 345 (Ala.Crim.App.1992). B.H. has failed to show that his statement to Detective Morrow was involuntary.

III.
B.H.'s third and fifth contentions are that the evidence presented at trial *349 was insufficient to prove a prima facie case on either charge. He argues that the State's "entire case" was based on "the unreliable witness testimony of the accuser." More specifically, he argues that the victim's testimony contained numerous contradictions, that the State failed to establish an actual date and time for the incident, and that the victim had engaged in "rehearsed parroting" regarding the facts of the incident.
J.H.'s testimony was sufficient to establish a prima facie case with regard to both offenses. See Hooper v. State, 448 So.2d 501 (Ala.Crim.App.1984) (testimony of child victim was sufficient evidence to submit sexual abuse case to the jury); Minnifield v. State, 392 So.2d 1288 (Ala. Crim.App.1981) (evidence was sufficient to prove rape where the victim was the only person to testify to the facts of the crime). Conflicts in the testimony of the victim are not a ground for reversal on appeal. See Ogle v. State, 548 So.2d 499 (Ala.Crim.App. 1988) (verdict rendered on conflicting evidence will not be reversed on appeal). With regard to the date and time of the offense, expert witness Cindy Abercrombie explained that an exact time frame was difficult to establish because of the victim's young age. She also testified that a verbatim repetition of the facts would not be unusual if the victim was talking about a single incident. The credibility of witnesses and the truth of testimony in a delinquency proceeding is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Crim.App.1992).
Furthermore, the testimony of the victim was not the only evidence the State offered. B.H. told Detective Morrow that he took J.H. into his bedroom, pulled down his pants, and started to make her suck his penis. This admission was evidence that he had committed the offense of enticing a child[2] and that he had prepared to commit the offense of sodomy.[3] Detective Morrow testified that each time she questioned B.H. about whether he had made the victim suck his penis, his demeanor changed and he looked down. This testimony was circumstantial evidence indicating that B.H. was guilty of the sodomy charge. See Conley v. State, 354 So.2d 1172 (Ala. Crim.App.1977) (the defendant's post-crime conduct shows a state of mind characterized by our court as consciousness of guilt and admissible as circumstantial evidence of guilt).

IV.
B.H. contends that the trial court should have granted his motion to dismiss the sodomy charge because, he says, the State failed to prove the element of forcible compulsion. Section 13A-6-63(a)(1), Ala.Code 1975, provides that a person commits the crime of first-degree sodomy if he engages in deviate sexual intercourse with another person by "forcible compulsion." Section 13A-6-60(8), Ala.Code 1975, defines forcible compulsion as "[p]hysical force that *350 overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."
It is uncontested that there was no evidence of physical force or an express threat in the present case. The State contends that the juvenile court's adjudication of guilt was not unreasonable because, it argues, an implied threat could be inferred from the relationship between the parties and the disparity in their sizes and ages. In Powe v. State, 597 So.2d 721 (Ala.1991), the Alabama Supreme Court held that the jury could reasonably infer that the defendant, the father of the 11-year-old victim, held a position of authority and domination over the victim sufficient to allow the inference of an implied threat if she refused to comply with his demands. However, in Ex parte J.A.P., 853 So.2d 280 (Ala.2002), the Court held that the forcible-compulsion analysis in Powe is limited to adult-child relationships in which the adult has dominion and control over the child.
This court is bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975. Because B.H. was not an adult in an authoritative position to exercise control and domination over J.H., we must hold that there was no implied threat in the present case. Therefore, the juvenile court should not have adjudicated B.H. delinquent on the sodomy charge.
For the foregoing reasons, the juvenile court's adjudication of delinquency for the offense of enticing a child for an immoral purpose is affirmed. The court's adjudication of delinquency for the offense of first-degree sodomy is reversed and a judgement rendered in B.H.'s favor on that charge.
AFFIRMED AS TO CONVICTION AND SENTENCE FOR ENTICING A CHILD; REVERSED AS TO CONVICTION FOR SODOMY, AND JUDGMENT RENDERED.
BASCHAB and SHAW, JJ., concur.
COBB J., concurs specially, with opinion.
WISE, J., concurs specially, with opinion.
COBB, Judge (concurring specially).
"`The doctrine of stare decisis, though not without its limitations, is the only thing that gives form, and consistency, and stability to the body of the law. Its structural foundations, at least, ought not to be changed except for the weightiest reasons.'" Exxon Corp. v. Department of Conservation & Natural Res., 859 So.2d 1096, 1102 (Ala.2002) (quoting Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 340, 110 So. 574, 580 (1925) (Somerville, J., dissenting)). Because I believe in this cornerstone principle of our judicial system, I reluctantly concur with the other members of this Court in this case.
The victim in this case, J.H., was at the impressionable age of 5 when her 15-year-old uncle, B.H., took her into his bedroom, exposed his penis, and asked her to put her mouth on his penis. This incident took place at the home of J.H.'s grandmother. There is no evidence of any forcible compulsion; J.H. merely obeyed her uncle's request.
The legal analysis in the majority opinion is correct. In Powe v. State, 597 So.2d 721 (Ala.1991), the Alabama Supreme Court held the threat of forcible compulsion was inherent when the perpetrator of the sexual offense against a child victim is an adult with whom the child is in a relationship of trust. However, the Supreme Court in Ex parte J.A.P., 853 So.2d 280 *351 (Ala.2002), limited the forcible-compulsion analysis of Powe to cases involving the sexual assault of children by adults who exercise positions of domination and control over children. J.H. did not reside with B.H., and there was no evidence indicating that he held a position of domination and control over J.H. Therefore, because of the holding of Ex parte J.A.P., supra, this Court cannot in this case apply the forcible-compulsion analysis found in Powe. Even though J.H. was only 5 years old, B.H. cannot be found guilty of first degree sodomy under § 13A-6-63(a)(3), Ala.Code 1975, because he was 15 years old at the time he sodomized his niece. Because B.H. is not being punished for this disturbing act, the ends of justice are being thwarted.
The outcome in this case truly troubles me. As judges, however, our power to rectify this situation is limited. "`"To declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative."'" City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala.2003), (quoting Sanders v. Cabaniss, 43 Ala. 173, 180 (1869), quoting in turn Thomas M. Cooly, Constitutional Limitations 91-95 (1868)). I write specially to encourage the Alabama Legislature to revisit our sexual-offense statutes §§ 13A-6-60 through -70, Ala.Code 1975and to close the loophole that has allowed B.H. to elude the outstretched fingers of justice. The citizens of Alabama should have peace of mind in the knowledge that our laws protect our youngest and most vulnerable. However, as exemplified by this case, there is a breakdown in our current statutory structure regarding sexual offenses. Because this Court's hands are tied in this matter, I call on the legislature to amend our current laws regarding sexual offenses to provide justice in cases such as this one.
WISE, Judge (concurring specially).
I reluctantly concur with the main opinion's reversal of the juvenile court's finding of delinquency based upon its finding that B.H. was guilty of first-degree sodomy, based on the holding of the Alabama Supreme Court in Ex parte J.A.P., 853 So.2d 280 (Ala.2002). However, I write to urge the Supreme Court to revisit its holding in Ex parte J.A.P.
This Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and "is without authority to overrule the decisions of [that] court." Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972). Thus, we have no choice; we must reverse the juvenile court's order finding of delinquency and render a judgment in B.H.'s favor as to that charge. In my opinion, the facts in this case establish that the 5-year old victim was either physically compelled or psychologically coerced into participating in a sex act with her 15-year old uncle. However, the holding in Ex parte J.A.P. prevents him from being held accountable for this reprehensible conduct. The Supreme Court should revisit its holding in Ex parte J.A.P. at its earliest convenience in order to prevent injustices such as this from occurring in future cases.
NOTES
[1] J.H. referred to B.H.'s penis as "the thing between his legs," and she said that she thought that he was going to "use the bathroom" in her mouth.
[2] Section 13A-6-69, Ala.Code 1975, provides that a person commits the offense of enticing a child for an immoral purpose if "with lascivious intent to entice, allure, persuade or invite . . . any child under 16 years of age to enter any . . . room . . . for the purpose of proposing to such child the performance of . . . an act which constitutes the offense of sodomy . . . or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person."
[3] Section 13A-6-63(a)(1), Ala.Code 1975, provides that a person commits the offense of sodomy in the first degree if he "engages in deviate sexual intercourse with another person by forcible compulsion." Section 13A-6-60(2) defines "deviate sexual intercourse" as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another."