944 So.2d 981 (2006)
R.E.N.
v.
STATE of Alabama.
CR-04-1846.
Court of Criminal Appeals of Alabama.
May 26, 2006.
*982 Dan Blalock, Jr., Abbeville, for appellant.
Troy King, atty. gen., and Kristi L. Deason Hagood, asst. atty. gen., for appellee.
COBB, Judge.
R.E.N. appeals his May 10, 2005, conviction by the Henry Circuit Court of one count of first-degree rape in violation of § 13A-6-61, Ala.Code 1975, and one count of first-degree sodomy in violation of § 13A-6-63, Ala.Code 1975. On June 10, 2005, the trial court sentenced R.E.N. to concurrent terms of imprisonment of 40 years and imposed a fine of $3,500 as to each count. He was also ordered to pay $1,000 to the victims' compensation fund in accordance with § 15-23-17(b), Ala.Code 1975, as to each count. We affirm.
The evidence tended to show the following: T.N. attended a church-affiliated camp for youth where the topic of rape was discussed, and T.N. decided she had to tell what had happened to her ". . . to save other people's lives  to save other girls from getting hurt." (R. 84.) T.N. told her step-father that her biological father, R.E.N., had molested her while she lived with him in Henry County. T.N.'s mother then told her other daughter, N.N., that T.N. had been molested, and N.N. told her mother that R.E.N. had also molested her.
N.N. testified that R.E.N. made her perform fellatio on him and that R.E.N. would perform cunnilingus on her and insert his fingers into her vagina. She could not recall how old she was when R.E.N. began performing these acts on her. According to N.N., R.E.N. had had sexual intercourse with her in a camping trailer next to R.E.N.'s manufactured home before her fifteenth birthday. N.N. did not recall anything R.E.N. said to her before or *983 while they were having sexual intercourse. In total, N.N. recalled having sexual intercourse with R.E.N. approximately 10 times. N.N. also stated the she and her father had oral sex every time she was at her father's residence.
N.N. testified that her father did not have any particular rules for her to follow; however, she obeyed her father because he was her parent. She also stated that he did not threaten her to force her into a sexual relationship. Instead, he told her that he could go to jail if she told anyone about their relationship and that she would not have a father anymore. This made her feel sad "because everybody's supposed to have a dad." (R. 47). She also stated she was afraid of R.E.N. "[b]ecause you see things on T.V., and I didn't want it to happen to me. I didn't want to end up getting killed or anything." (R. 47.) N.N. testified that when she and R.E.N. had sexual intercourse she "just laid there. I was too scared to [fight him off.]" (R. 48.)
N.N. never told her stepmother about the sexual abuse "[b]ecause she probably wouldn't believe me, and she doesn't really like me anyways." (R. 49.)
N.N.'s sexual abuse occurred from the age of 13 until the age of 16. N.N. and T.N. would visit R.E.N. every other weekend. At the time, N.N. and T.N. lived with their mother in Birmingham, and their mother and R.E.N. would meet in Montgomery (halfway between Birmingham and her father's residence) to facilitate visitation. N.N. voluntarily went to her father's residence "so then nobody would know, and so [she] could see the two babies."[1] (R. 56.)
R.E.N. was indicted for rape and sodomy as to both N.N. and T.N. The jury acquitted R.E.N. of all charges related to T.N.
On appeal, R.E.N. argues that the trial court erred in denying his motion for a judgment of acquittal at trial because there was insufficient evidence to support a conviction for either first-degree rape or first degree sodomy; he argues that the State offered no evidence of forcible compulsion as required by §§ 13A-6-61 and -63, Ala.Code 1975.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034 (Ala. Crim.App.1998) (quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala.1985)). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997) (quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App. 1992)). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim. App.1998) (quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990)). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge *984 whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
R.E.N. correctly asserts that factually his case is almost identical to Rider v. State, 544 So.2d 994 (Ala.Crim.App.1989). In Rider, a stepfather was accused of molesting his stepdaughter. The stepdaughter refused to answer the prosecutor's question as to whether she "voluntarily" performed oral sexual acts on her stepfather. She testified she tried to "mind" her stepfather because she "liked the way he treated her, like she was his only child." 544 So.2d at 995. The victim in Rider also stated she did not resist because she believed if she stopped her stepfather would not treat her the way he did. The victim also stated that she did not tell anyone about the abuse because she did not want her stepfather to go to jail. 544 So.2d at 995.
Noting the existence of two types of forcible compulsion, physical force which overcomes earnest resistance and an implied or express threat that places a person in fear of immediate death or serious physical injury to himself or another person, this Court held that no forcible compulsion existed in that case. Although the evidence indicated there was some physical force involved, this Court held there was no evidence of any earnest resistance by the victim and thus reversed the conviction. 544 So.2d at 996. Similarly in the matter currently before this Court, there is no evidence of "earnest resistance" on the part of N.N.
In Powe v. State, 597 So.2d 721 (Ala. 1991), the Alabama Supreme Court held that a jury could reasonably infer that the defendant, the father of the 11-year old victim, held a position of authority and domination over the victim sufficient to allow the inference of an threat to the daughter if she did not comply with his wishes and demands. In explaining its rationale in Powe v. State, supra, the Alabama Supreme Court quoted the following from the Pennsylvania Supreme Court:
"There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion . . . derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult . . . without the use of physical force or violence or the explicit threat of physical force or violence."
597 So.2d at 728, quoting Commonwealth v. Rhodes, 510 A.2d 537, 510 A.2d 1217, 1227 (1986).
In Ex parte J.A.P., 853 So.2d 280 (Ala. 2002), the Alabama Supreme Court limited Powe's forcible-compulsion analysis to cases involving the sexual assault of children by adults who exercise positions of domination and control over the children.
The evidence showed that R.E.N. was N.N.'s father. R.E.N. and N.N.'s mother had joint custody of N.N., and N.N. would visit her father every other weekend. N.N. testified she was afraid of the consequences of telling of the sexual abuse at the hands of her father. Specifically, she testified that she was scared because ". . . your father's not supposed to do that to you. And I was hoping it wasn't true." (R. 54.) Considering these facts and the forcible compulsion analysis set forth in Powe, we conclude that the evidence in the *985 present case is sufficient to support the trial court's denial of R.E.N.'s motion for a judgment of acquittal. We further hold that Powe v. State, 597 So.2d 721 (Ala. 1991), Ex parte J.A.P., 853 So.2d 280 (Ala. 2002), and their progeny have implicitly overruled this Court's holding in Rider v. State, 544 So.2d 994 (Ala.Crim.App.1989), inasmuch as Rider did not recognize the forcible-compulsion analysis found in Powe v. State as limited by Ex parte J.A.P. to adults who exercise positions of domination and control over a child.
For the foregoing reasons, we affirm the judgment of the Henry Circuit Court.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] N.N. had two half-siblings who were the children of R.E.N. and who resided with R.E.N. and his wife.