JOINER, Judge,
dissenting.
I respectfully dissent. The issue in this appeal is whether the State presented sufficient evidence of the forcible-compulsion element of first-degree rape. See § 13A-6-61(a)(l), Ala.Code 1975 (“A person commits the crime of rape in the first-degree if ... [h]e or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion_”). “Forcible compulsion” is defined as “[pjhysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.” § 13A-6-60(8), Ala.Code 1975 (emphasis added).
The main opinion holds that there was insufficient evidence of forcible compulsion to support C.D.B.’s conviction for first-degree rape. As to whether the State presented sufficient evidence of forcible compulsion by an implied threat, the main opinion cites Ex parte J.A.P., 853 So.2d 280 (Ala.2002). The main opinion states that in Ex parte J.A.P. the Alabama Supreme Court held that “its decision in Powe v. State, 597 So.2d 721 (Ala.1991), under which an implied threat may be inferred, applies only in ‘cases involving the sexual assault of children by adults who exercised positions of domination and control over the children’ and does not apply in cases involving sexual relations between two children.” 81 So.3d at 401 (quoting Ex parte J.A.P., 853 So.2d at 284). The main opinion also cites D.W. v. State, 3 So.3d 955, 957 (Ala.Crim.App.2008), for the same proposition.
To the extent the main opinion suggests that Ex parte J.A.P. holds that the State may never prove the element of forcible compulsion by an implied threat when the accused is a juvenile, I respectfully disagree. If Ex parte J.A.P. indeed stands for the proposition that forcible compulsion may never be proved by an implied threat in a case involving two juveniles, the decision is in conflict with the plain meaning of the language in the statutory definition of “forcible compulsion” in § 13A-6-60(8), Ala.Code 1975, which does not exclude from its application cases involving two juveniles. The holding in Ex parte J.A.P., however, is clearly limited to those situations in which the State attempts to prove an implied threat solely by alleging that the threat may be inferred based upon the *411 accused’s allegedly exercising a position of domination and control over the alleged victim. Ex parte J.A.P., 853 So.2d at 284 (“This Court [in Powe v. State, 597 So.2d 721 (Ala.1991),] made it quite clear that its holding would apply only to cases involving the sexual assault of children by adults who exercised positions of domination and control over the children.”).
In the present case, the State does not argue, as the main opinion suggests, that an implied threat may be inferred because C.D.B. allegedly exercised a position of domination and control over D.E.D. Rather, the State cites the size discrepancy between C.D.B. and D.E.D. — at the time of the incident, C.D.B. was 6 feet 1 inch tall and weighed 827 pounds, and D.E.D. was less than 4 feet 3 inches tall and weighed less than 85 pounds. The State also cites D.E.D.’s testimony that at some point before the incident in question she had seen C.D.B. “rip a belt away from his dad while he was being whipped.” (State’s brief, p. 9.) Specifically, D.E.D. testified:
“Q. ... [W]hat did you think would happen if you told [C.D.B.], no, I’m not going to sit down on top of you, I’m not going to do that? What did you think was going to happen?
“A. When Daddy was whooping [C.D.B.) when he did something before that, he snatched the belt away from Daddy, and when Daddy came out of the kitchen, his toe was bleeding. I didn’t want him to find anytMng around me that he could hit me with and hurt me.”
(R. 27 (emphasis added).) Under these particular circumstances, the State argues that it was reasonable for D.E.D. to think that C.D.B. would hurt her if she did not do what he told her to do. D.E.D.’s fear was not based on a generalized “implied threat of some sort of disciplinary action” as might exist in the context of a parent-child relationship. Instead, according to her testimony, her fear was based on a specific instance: having seen C.D.B. “snatch” a belt from his father while the father was disciplining him. Accordingly, I think the facts in this case distinguish it from Ex parte J.A.P., supra, as well as Powe, supra, on which Ex parte J.A.P. relied. In both Ex parte J.A.P. and Powe, there was no evidence indicating that the alleged victims claimed to have been afraid based on observing the actions of the accused in a specific past incident like that described by D.E.D. in the present case.[2]
“[F]orcible compulsion does not exist in a vacuum; rather it is viewed in light of the surrounding circumstances, such as the respective ages of the victim and the perpetrator, the relationship between them, the circumstances under which the act took place, and any injuries the victim suffered.” Ex parte Williford, 931 So.2d 10, 14 (Ala.2005). In this case, the juvenile court had the “opportunity to observe the appellant’s physical characteristics, including his size and strength, as compared to [the victim’s] size and strength, during the delinquency hearing.” C.M. v. State, 889 So.2d 57, 63 (Ala.Crim.App.2004). Although D.E.D. testified that C.D.B. did not expressly threaten her or “do anything to make [her] feel like if [she] didn’t do [what he asked], he would hurt [her],” 81 So.3d at 400-01, the juvenile court also had before it D.E.D.’s testimony that because she had seen C.D.B. overpower his father be *412 fore, she was afraid that C.D.B. would hurt her if she did not comply. Thus, the juvenile court had conflicting evidence as to whether C.D.B. implicitly threatened D.E.D. Consequently, I think there was sufficient evidence from which the juvenile court could conclude that the State proved the element of forcible compulsion based on an implied threat that C.D.B. would harm D.E.D. if she did not do what he told her to do. See Poole v. State, 650 So.2d 541, 543 (Ala.Crim.App.1994):
“ ‘... “[A] jury may believe part of the evidence of a witness and reject part.” Cochran v. State, 42 Ala.App. 144, 147, 155 So.2d 530, cert. denied, 275 Ala. 693, 155 So.2d 533 (1963). “In order to convict the defendant the jury was not required to accept as true every statement of the witnesses.” Freeman v. State, 37 Ala.App. 623, 630, 74 So.2d 513, cert. denied, 261 Ala. 697, 74 So.2d 520 (1954). “Conflicting evidence should be reconciled by the jury, if possible, and if they can not reconcile it, they may base their verdict on that part of the testimony which they consider worthy of credit, and reject that which they deem to be unworthy of belief. Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable.” Arnold v. State, 33 Ala.App. 146, 147, 30 So.2d 587 (1947). “It is not the law that mere contradicting statements or declarations of a witness are sufficient to raise a reasonable doubt in the minds of the jury as to the truth of the testimony of a witness.” Walters v. State, 24 Ala.App. 370, 373, 135 So. 600 (1931).
“ ‘ “The inconsistencies may impair the credibility of the witness and reduce the weight of the testimony, but they do not destroy the probative force of the testimony as a matter of law — the weight to be given such testimony is for the trier of fact to determine.” 30 Am.Jur.2d Evidence § 1082 (1967).’
“Jones v. State, 469 So.2d 713, 716-17 (Ala.Cr.App.1985). ‘The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and the inferences to be drawn from the evidence, even where susceptible to more than one rational conclusion, are for the jury.’ Ward v. State, 356 So.2d 238, 240 (Ala.Cr.App.), cert. denied, 356 So.2d 242 (Ala.1978). The credibility of the 11-year-old victim was an issue for the jury. ‘It is not the business of this court to second-guess juries.’ Smith v. State, 604 So.2d 434, 436 (Ala.Cr.App.1992).”
In this case, this juvenile court was the trier of fact and was in the best position to weigh and evaluate the evidence, including the evidence going to the issue whether an implied threat existed. This Court should not reweigh the evidence or substitute its judgment for that of the juvenile court. I would therefore affirm the juvenile court’s adjudication of C.D.B. as delinquent.

. L.P., the alleged victim in Ex parte J.A.P., did testify that she was "afraid” of J.A.P. "and that she knew that what he was doing was wrong.” J.A.P. v. State, 853 So.2d 264, 267 (Ala.Crim.App.2001), rev'd, 853 So.2d 280 (Ala.2002). That fear, however, apparently was based on alleged previous instances of "sexual contact” between J.A.P. and L.P. There was no evidence indicating that L.P. claimed to be afraid of J.A.P. because she thought he would hurt her if she did not comply.