JOINER, Judge.
W.B.S. appeals the Etowah Juvenile Court's summary dismissal of his petition for a writ of error coram nobis. We remand.
Facts and Procedural History
On June 9, 2010, delinquency petitions were filed in the Juvenile Court of Etowah County, charging W.B.S. with four counts *136 of first-degree sexual abuse, see § 13A-6-66(a)(1), Ala. Code 1975, one count of first-degree sodomy, see § 13A-6-63(a)(1), Ala. Code 1975, and one count of resisting arrest, see § 13A-10-41, Ala. Code 1975. After conducting a hearing on the delinquency petitions, the juvenile court found five charges to be true-three counts of first-degree sexual abuse, one count of first-degree sodomy, and one count of resisting arrest-and adjudicated W.B.S. delinquent. The juvenile court then ordered that W.B.S. be committed to the Alabama Department of Youth Services sexual-offender program for an indefinite period and, further, ordered W.B.S. to register as a sex offender for the rest of his life.
W.B.S. appealed his delinquency adjudications to this Court, which adjudications this Court affirmed in an unpublished memorandum issued on February 3, 2012. See W.B.S. v. State (No. CR-10-1806, Feb. 3, 2012), 130 So.3d 587 (Ala. Crim. App. 2012) (table). In that unpublished memorandum, we summarized the facts supporting W.B.S.'s delinquency adjudications:
"W.B.S. was charged with the first-degree sexual abuse of A.S., R.J., and J.J.[1] He was also charged with first-degree sodomy in relation to J.J. The incidents were alleged to have happened between 2006 and 2008.[2](C. 25-29.) At trial, A.S. testified that sometime in 2008, when she was nine years old, she was playing video games with W.B.S. and J.J. She stated that W.B.S. leaned over and began kissing her on the lips. (R. 30.) A.S. then testified that W.B.S. 'reached and touched [her] breast.' (R. 30.) According to A.S., W.B.S. touched her underneath her training bra with his hand. (R. 32.) A.S. stated that W.B.S. did not say anything to her nor did she ask him to stop.
"R.J., who was 12 years old at the time of the trial, testified that he, J.J., and W.B.S. were building a fort one day when W.B.S. touched him. R.J. indicated that W.B.S. touched him with his penis. (R. 73.) R.J. also testified that W.B.S.'s 'private' was outside of his clothes and that W.B.S. touched him with it. (R. 74.) R.J. stated that W.B.S. used his penis to touch the 'inside' of R.J.'s 'bottom.' (R. 74.) R.J. testified that W.B.S. stopped when he asked him to stop. (R. 75.)
"J.J., who was 15 years old at the time of trial, testified that when he was about 11 years old, W.B.S. began to want to play games that involved 'touching each other where you are not supposed to and stuff like that.' (R. 96.) J.J. testified that W.B.S. would put his penis in J.J.'s mouth and butt. (R. 97.) J.J. also stated that W.B.S. made J.J. put his penis in W.B.S.'s mouth and butt. (R. 100.) When J.J. was asked what W.B.S. did in order to make him do these things, J.J. replied, 'Peer pressure pretty much.' (R. 100.) J.J. testified that peer pressure was when '[s]omeone like keeps saying come on, come on, do it, do it, you know, just keeps talking you into it.' (R. 113-14.) However, J.J. denied that W.B.S. threatened him or did anything to hurt him. (R. 100-101.) He also stated that W.B.S. did not hold him down and make him do those things. (R. 115.) J.J. did state that W.B.S. told him that he would 'probably get in trouble too' if he told anyone what happened. (R. 101-102.)
"______________
"[1] W.B.S. was also charged with the first-degree sexual abuse of J.M.J. However, the juvenile court did not find that there was sufficient evidence to adjudicate W.B.S. delinquent on that count. (R. 287.)
"[2] W.B.S. was born on June 13, 1993. (C. 2.) Accordingly, he would have been *137 no older than 15 at the time these incidents allegedly took place."
In his direct appeal, W.B.S. argued that the juvenile court erred when it denied his motion for a judgment of acquittal because, he said, the State failed to present any evidence "regarding the element of forcible compulsion, a requirement for both first-degree sexual abuse and first-degree sodomy." In addressing this claim, this Court concluded that W.B.S.'s argument was not preserved for appellate review but explained:
"We note that in reviewing the record it appears that the State may have failed to present evidence regarding forcible compulsion. The witnesses' testimony did not appear to suggest that W.B.S. used physical force nor did it suggest that W.B.S. made express or implied threats that would place the victims 'in fear of immediate death or serious physical injury to himself or another person.' Accordingly, the failure of W.B.S.'s trial attorney to state grounds for his motion for judgment of acquittal as well as his failure to file any post-trial motions challenging the sufficiency of the evidence may rise to the level of ineffective assistance of counsel. Since W.B.S.'s trial counsel did not file any post-trial motions, a postconviction petition filed pursuant to Rule 32, Ala. R. Crim. P., would be the first opportunity for W.B.S. to raise that issue."
(Emphasis added.)[1]
Thereafter, on December 21, 2012, W.B.S. filed a Rule 32, Ala. R. Crim. P., petition for postconviction relief in the juvenile court. In his petition, W.B.S. alleged that his counsel was ineffective because, he said, his trial counsel failed to make a "proper motion for a judgment of acquittal at the close of the State's case." According to W.B.S.:
"Effective trial counsel would have argued to the [juvenile] court that [W.B.S.] could not be adjudicated a delinquent due to the State's failure to present evidence of forcible compulsion. Had this argument been made by trial counsel to the [juvenile] court, it is likely that the [juvenile] court would have granted [W.B.S.'s] motion for a judgment of acquittal."
(Record in W.B.S. v. State (CR-12-1336), C. 36.) The juvenile court concluded, however, that Rule 32 is applicable only to a "Defendant convicted of a criminal offense" and "a juvenile is not 'convicted of a criminal offense' so as to be able to take advantage of the provisions of Rule 32." (Record in CR-12-1336, C. 42-43.) W.B.S. appealed the juvenile court's decision to this Court.
On appeal, this Court examined the record and determined that "[t]here is no indication from the documents filed with this Court that the juvenile judge certified the record as adequate to appeal directly to this Court. Nor has W.B.S. moved to supplement the record to correct this deficiency." We explained:
" Rule 28, Ala. R. Juv. P., allows for appeals directly to this Court only when the record has been certified as adequate by the juvenile court judge or when the parties stipulate that only questions of law are involved. The record filed in this case contains no certification from the juvenile judge. Neither does the record contain any stipulations by the parties. Also, W.B.S. did not move to correct this deficiency when the record was filed. According to *138 J.C.C. v. State, 36 So.3d 577 (Ala. Crim. App. 2009), this case is hereby TRANSFERRED to the Etowah Circuit Court for de novo proceedings."
W.B.S. v. State (No. CR-12-1336, Aug. 21, 2013) (order transferring case to the Etowah Circuit Court).
"Upon receipt of the case, the Etowah Circuit Court determined that the threshold question was: 'Do the provisions of Rule 32, [Ala. R. Crim. P.], apply in juvenile cases?' (C. 3.) The circuit court instructed the parties to file legal memorandums addressing this question. W.B.S.... also filed what he styled as a 'Motion for Relief From Judgment Under Rule 60(b), [Ala. R. Civ. P.].' In that motion, W.B.S. argued that, if Rule 32, Ala. R. Crim. P., does not apply to juvenile proceedings, he should be able to obtain relief under Rule 60(b), Ala. R. Civ. P. The circuit court ... concluded that neither Rule 32, nor Rule 60(b) was applicable to juvenile-delinquency proceedings."
W.B.S. v. State, 192 So.3d 417, 417-19 (Ala. Crim. App. 2015) (footnotes omitted).
On W.B.S.'s appeal from that decision, this Court agreed with the circuit court and affirmed its judgment summarily dismissing W.B.S.'s Rule 32 petition. In doing so, this Court first rejected W.B.S.'s contention that Rule 60(b), Ala. R. Civ. P., could be used as a mechanism through which a juvenile could obtain "post-adjudication" relief, explaining:
"Because juvenile-delinquency proceedings are 'quasi-criminal in nature,' the Alabama Rules of Civil Procedure are not applicable to those proceedings, see Rule 1(a), Ala. R. Juv. P., and Rule 60(b) cannot be the mechanism by which W.B.S.-or any other juvenile who has been adjudicated delinquent-can challenge trial counsel's effectiveness."
W.B.S., 192 So.3d at 419. This Court then addressed whether Rule 32 applies to a juvenile court adjudication, explaining:
"The language used in Rule 32.1 is plain and expressly extends 'postconviction' relief to only a 'defendant who has been convicted of a criminal offense.' (Emphasis added.) To conclude that Rule 32 applies to juvenile adjudications, this Court must hold that the phrase 'defendant who has been convicted of a criminal offense,' includes both juveniles-who are certainly not classified as 'defendants'-and delinquency adjudications-which are not criminal convictions, see § 12-15-220(a), Ala. Code 1975.
"....
"Thus, the plain language of Rule 32.1, Ala. R.Crim. P., does not include juveniles who have been adjudicated delinquent."
W.B.S., 192 So.3d at 419-20.
This Court noted, however, that
" 'other options exist through which W.B.S. could seek relief.' 192 So.3d at 426 (Burke, J., dissenting). For example, nothing precludes a juvenile from challenging counsel's effectiveness in a motion for a new trial, on direct appeal, or by filing a common-law writ. Here, because W.B.S. has lost the opportunity to file a motion for a new trial challenging his counsel's effectiveness, see Rule 1(B), Ala. R. Juv. P., and his adjudications have been affirmed on direct appeal, W.B.S.'s only avenue for challenging his counsel's effectiveness would be through the filing of a common-law writ. Although Rule 32 'displaces all post-trial remedies except post-trial motions under Rule 24[, Ala. R. Crim. P.,] and appeal' and '[a]ny other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under [Rule 32],' see *139 Rule 32.4, Ala. R. Crim. P., Rule 32 only 'displaces' such postconviction remedies for 'defendant[s] who ha[ve] been convicted of a criminal offense.' In other words, if a juvenile who has been adjudicated delinquent is not permitted to proceed under Rule 32, Ala. R. Crim. P., no common law 'postconviction' remedies are 'displaced.' Thus, Rule 32 does not prohibit W.B.S. from filing a common-law writ challenging his adjudication.[5]
"________________
"[5] It would be beyond illogical to conclude that Rule 32 does not apply to juveniles and yet also to conclude that Rule 32 operates to preclude that same juvenile from taking action other than a Rule 32 petition."
W.B.S., 192 So.3d at 420 (emphasis added).[2]
This Court did not express an opinion as to which common-law writ a juvenile who has been adjudicated delinquent may use to collaterally attack his or her adjudication.[3] Subsequently, on December 29, 2015, W.B.S. filed in the Etowah Juvenile Court a petition for a writ of error coram nobis.[4]
In his coram nobis petition, W.B.S. alleged that his trial counsel was ineffective because, he said, his trial counsel "made only a general motion for a judgment of acquittal at the close of the State's case." (C. 37.) W.B.S. alleged:
"The Court of Criminal Appeals held on direct appeal that trial counsel's general motion was insufficient to preserve the obvious error that occurred in the trial. The State's evidence failed to prove the essential element of forcible compulsion. The Court of Criminal Appeals held trial counsel should have made a specific objection as to the missing element. Trial counsel made no posttrial motion, or motion for a new trial, specifically raising this issue. Trial counsel's failure to do so led to the affirmance of the juvenile court adjudications.
"Trial counsel's performance fell below any objective standard of reasonableness. Further, had trial counsel raised the appropriate objection to the State's evidence, a motion for a judgment of acquittal would have been granted at either the trial or appellate level. W.B.S. was thus prejudiced by his trial counsel's deficient performance.
"W.B.S. has been denied his right to due process of law, and the equal protection of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution of Alabama. As a result of the juvenile court adjudications, W.B.S. was ordered to be confined at the Alabama Department of Youth Services. W.B.S. is still required to register as a sex offender for the rest of his life. His liberty to *140 seek work, as well as a place to establish a residence, have been severely limited as a result of the juvenile court adjudications.
"W.B.S. is factually innocent of having committed any crime under the laws of Alabama. The underlying crimes against W.B.S. required the State to prove the element of forcible compulsion, W.B.S. has been denied due process of law by being denied a forum within which to present his ineffective assistance of counsel claim. He has been denied the equal protection of the law in that he has been denied such a forum which would clearly be available to an adult convicted of a criminal offense."
(C. 37-38.) In an attachment to his petition, W.B.S. pleaded the following additional facts as to his claim of ineffective assistance of counsel:
"(2) In each of the charges against [W.B.S.], he was accused of using 'forcible compulsion' to commit the alleged crimes. (C. 2, 25-29; R. 29-35, 75, 100-101, 113-14). This is consistent with the statutes defining sexual abuse 1st and sodomy 1st, which both require proof of 'forcible compulsion' as an element of each offense. See Code of Alabama 1975, § 13A-6-66(A) and § 13A-6-63. However, none of the alleged victims made any allegation of forcible compulsion being present at any of the alleged incidents of sexual abuse.
"(3) In Code of Alabama 1975, § 13A-6-60, the Alabama Legislature specifically defined 'forcible compulsion' as 'physical force that overcomes earnest resistance or a threat express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.' Appellate courts in Alabama have held that forcible compulsion exists where (1) the defendant used physical force that overcame the alleged victim's earnest resistance, or (2) that the defendant used threats, either express of implied, that placed the alleged victims in of immediate death or serious physical injury. See Ex Parte J.A.P., 853 So.2d 280 (Ala. 2002), and D.W. v. State, 3 So.3d 955 (Ala. Crim. App. 2008). There must be evidence of forcible compulsion in order for there to be a conviction for sodomy in the first degree or sexual abuse in the first degree, but as shown below, none of the alleged victims testified to anything that would support a finding of forcible compulsion under either method of proof available to the State. By failing to produce any evidence of physical force or a threat of harm, the State failed to establish an essential element of the offenses. A determination of guilt should not have been entered at trial, and the adjudication of delinquency should have been reversed on appeal. C.D.B. v. State, 81 So.3d 399 (Ala. Crim. App. 2011).
"(4) As the Court of Criminal Appeals stated in reversing a sodomy conviction against another juvenile in D.W. v. State, 3 So.[3]d 955, 957 (Ala. Crim. App. 2008), 'the State did not present any evidence that the appellant used physical force that overcame D.W.'s and A.S.'s earnest resistance. Also, it did not present any evidence that the appellant used threats, either express or implied, that placed D.W. and A.S. in fear of immediate death or serious physical injury.' Similarly, no evidence was presented in Petitioner's trial of any use of physical force that overcame any resistance, nor was any evidence presented of express or implied threats that placed the alleged victims in fear of immediate death or serious physical injury. In fact, the testimony was consistent that Petitioner stopped the alleged conduct if he met with any resistance."
(C. 48-49.)
On March 1, 2016, the State filed a motion to dismiss W.B.S.'s petition for a *141 writ of error coram nobis. In its motion, the State conceded that the writ of error coram nobis "is still available in limited circumstances" (C. 101), but argued that W.B.S.'s petition was due to be dismissed because "there is no assertion in said petition of any new facts that were unknown to him at the time of his trial. Rather, [W.B.S.] alleges matters of law which ... are not within the purview of the type of relief afforded by the writ, to-wit: ineffective assistance of counsel." (C. 101 (emphasis in original).)
On April 26, 2016, the juvenile court issued a written order dismissing W.B.S.'s petition. In that order, the juvenile court stated, in part:
"[T]he writ of error coram nobis is a common-law writ, the purpose of which is to correct a judgment in the same court in which it was rendered, on the ground of error in fact, for which there is no other remedy, and which fact did not appear of record; or it was unknown to the court when judgment was pronounced, and which, if known, would have prevented the judgment; and furthermore was unknown and could not have been known to the party by exercise of reasonable diligence in time to have been otherwise presented to the court unless he was prevented from so presenting by duress, fear, or other sufficient cause.... [A]dditionally, a writ of error coram nobis will not lie so as to enable a petitioner to question the merits of his convictions, i.e., questions of law.... [I]n viewing all of the foregoing conjunctively, a petition for the issuance of a writ of error coram nobis operates as a motion for new trial based on newly discovered evidence....
"... [U]pon review of [W.B.S.'s] petition read in conjunction with the foregoing, there is no assertion or allegation of any new facts that were unknown to [W.B.S.] at the time of his trial (indeed, the only matters raised in the petition are matters known to [W.B.S.] and which matters were those that actually occurred in his trial and presented to the court) and are further only matters which question the merits of his conviction which are outside the relief afforded by a writ of error coram nobis."
(C. 106-07 (citations omitted; emphasis added).) Thereafter, W.B.S. filed a timely notice of appeal.
Discussion
On appeal, W.B.S. contends that the juvenile court erred when it dismissed his petition for a writ of error coram nobis without allowing him to "pursue his claim." According to W.B.S., "coram nobis is the appropriate method to raise his ineffective-assistance-of-counsel claim" (W.B.S.'s brief, p. 9), and he "urges this Court to allow him to proceed via coram nobis on his ineffective-assistance-of-counsel claim." (W.B.S.'s brief, p. 8.)
In other words, W.B.S. contends: (1) that a petition for a writ of error coram nobis is the proper procedural mechanism by which a juvenile who has been adjudicated delinquent may collaterally challenge his delinquency adjudication; and (2) that the juvenile court in this case should have permitted W.B.S. to avail himself of that mechanism to challenge his delinquency adjudication on the basis that his counsel was ineffective. We address each argument in turn.
I.
As explained above, W.B.S. first contends that a petition for a writ of error coram nobis is the proper procedural mechanism by which a juvenile who has been adjudicated delinquent may collaterally challenge that adjudication. We agree.
*142 Rule 1(a), Ala. R. Juv. P., explains, in relevant part:
"If no procedure is specifically provided in these Rules [of Juvenile Procedure] or by statute, ... the Alabama Rules of Criminal Procedure shall be applicable to those matters that are considered criminal in nature."
(Emphasis added.) Because no procedural mechanism for a "postadjudication" petition is specifically provided for in either the Alabama Rules of Juvenile Procedure, the Alabama Rules of Criminal Procedure, or any statute, the only possible avenue for W.B.S. to seek the relief he requests is by filing a common-law writ.[5]
"At common law, there were two writs, one the writ of error, simpliciter, and the other the writ of error coram nobis. The writ of error was to review a matter apparent on the record. The writ of error coram nobis was to preserve the purity of a law court's judgment with respect to a matter not apparent on the record."
Ex parte Banks, 42 Ala.App. 669, 672, 178 So.2d 98, 101 (1965).
"The writ of error coram nobis was one of the oldest remedies of the common law. It lay to correct a judgment rendered by the court upon errors of fact not appearing on the record and so important that if the court had known of them at the trial it would not have rendered the judgment. The ordinary writ of error lay to an appellate court to review an error of law apparent on the record. The writ of error coram nobis lay to the court, and preferably to the judge that rendered the contested judgment. Its purpose was to allow the correction of an error not appearing in the record and of a judgment which presumably would not have been entered had the error been known to the court at the trial. Further, a judgment for the plaintiff in error on an ordinary writ of error may reverse and render the judgment complained of, while a judgment for the petitioner on a writ of error coram nobis necessarily recalls and vacates the judgment complained of and restores the case to the docket for new trial."
Joseph G. Gamble, Jr., The Writ of Error Coram Nobis in Alabama, 2 Ala. L. Rev. 281, 281-82 (1950) (footnotes omitted; some emphasis added). As the Supreme Court of Tennessee has stated: "The writ of error coram nobis is an extraordinary remedy known more for its denial than its approval. Penn v. State, 282 Ark. 571, 670 S.W.2d 426, 428 (Ark. 1984)." State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999). Even so, "Alabama Courts allow the writ of error coram nobis to attack judgments in certain restricted instances," Gamble, 2 Ala. L. Rev. at 295, and the Alabama Supreme Court has recognized that an ineffective-assistance-of-counsel claim is cognizable in a petition for a writ of error coram nobis. See, e.g., Ex parte Boatwright, 471 So.2d 1257, 1259 (Ala. 1985) (recognizing that a claim of ineffective assistance of counsel is cognizable in a petition for a writ of error coram nobis).
The State, in its brief on appeal, "questions whether the common-law writ of error coram nobis applies to juvenile proceedings" because, the State says, it "has found no opinions by the appellate courts of this state in which the writ of error coram nobis was allowed as a remedy to challenge an adjudication of delinquency in the juvenile courts." (State's brief, p. 17.) Indeed, so far as we can determine, there are no opinions from the appellate courts of this State involving a petition for a writ *143 of error coram nobis that challenged a juvenile-delinquency adjudication. On the other hand, however, we have found no decision categorically barring a juvenile from collaterally attacking his or her delinquency adjudication. We decline the State's implicit suggestion that we impose such a bar here.
We likewise disagree with the State's argument that, "although a remedy may be fashioned to alleviate [the deficiency that no postadjudication petition exists] in Alabama law, it must be the Alabama Supreme Court who fashions and provides a remedy for a claim of ineffective assistance of counsel to a juvenile who has been adjudicated delinquent." (State's brief, p. 21.) Although this Court may not amend the rules of procedure to provide a mechanism by which a juvenile may collaterally challenge his or her adjudication, see W.B.S., 192 So.3d at 419, we are not amending a rule of procedure in this case. This Court, instead, is simply recognizing that there exists no rule or statute in Alabama law providing a procedural mechanism by which a juvenile may collaterally challenge his or her delinquency adjudication. When no rule or statute controls, "[t]he common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature." § 1-3-1, Ala. Code 1975 (emphasis added).
Accordingly, we hold that the common-law writ of error coram nobis is the proper procedural mechanism by which W.B.S. may collaterally challenge his delinquency adjudications.
II.
W.B.S. next contends that the juvenile court should have permitted him to proceed on the ineffective-assistance-of-counsel claim in his petition for the writ of error coram nobis. We agree.
As explained above, W.B.S. filed a petition for the writ of error coram nobis in the Etowah Juvenile Court, alleging that his trial counsel was ineffective. In response, the State filed a motion to dismiss W.B.S.'s petition, but conceded that the writ of error coram nobis "is still available in limited circumstances." (C. 101.) The State argued, however, that W.B.S.'s petition was due to be dismissed not because a writ of error coram nobis was not an available remedy to W.B.S. but because, the State claimed, "there is no assertion in said petition of any new facts that were unknown to him at the time of his trial. Rather, [W.B.S.] alleges matters of law which ... are not within the purview of the type of relief afforded by the writ, to-wit: ineffective assistance of counsel." (C. 101 (emphasis in original).)
Thereafter, the juvenile court summarily dismissed W.B.S.'s petition, finding, in part:
"[U]pon review of [W.B.S.'s] petition read in conjunction with the foregoing, there is no assertion or allegation of any new facts that were unknown to [W.B.S.] at the time of his trial (indeed, the only matters raised in the petition are matters known to [W.B.S.] and which matters were those that actually occurred in his trial and presented to the court) and are further only matters which question the merits of his conviction which are outside the relief afforded by a writ of error coram nobis."
(C. 107.) This finding of the juvenile court was based on its conclusion that "a petition for the issuance of a writ of error coram nobis operates as a motion for new trial based on newly discovered evidence." (C. 107.)
*144 As stated in Part I, an ineffective-assistance-of-counsel claim is cognizable in a petition for a writ of error coram nobis. See, e.g., Ex parte Boatwright, 471 So.2d at 1259. The determination by the juvenile court appears to be based on the assumption that a claim of ineffective assistance of counsel may not be pursued in a coram nobis petition unless that ineffective-assistance claim is based upon newly discovered evidence. We do not, however, find support for the juvenile court's restriction of such a claim to one that is based only on newly discovered evidence. Rather, as the Alabama Supreme Court implicitly recognized in Boatwright, supra, a claim of ineffective assistance of counsel that is raised in a coram nobis petition is to be evaluated under the standards articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Boatwright, 471 So.2d at 1258.
With regard to pleading a claim of ineffective assistance of counsel in a petition for a writ of error coram nobis, the Alabama Supreme Court has explained:
"In Boatwright, the Court stated:
" 'It is clear from the decisions of the Court of Criminal Appeals that an evidentiary hearing must be held on a coram nobis petition which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief....
" 'In this case, it is clear that under the specific allegations of the sworn petition relating to assistance of counsel, the petitioner would be entitled to relief if those allegations were true. Thus, under the cited authorities, his petition was meritorious and he was entitled to an evidentiary hearing....' (Emphasis added.)
"The Court in Boatwright recognized and applied the well established rule that a petition for a writ of error coram nobis must contain more than mere naked allegations that a constitutional right has been denied. Thomas v. State, 274 Ala. 531, 150 So.2d 387 (1963).
"A petition for a writ of error coram nobis is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts), Thomas v. State, supra ; Ex parte Phillips, 276 Ala. 282, 161 So.2d 485 (1964) ; Stephens v. State, 420 So.2d 826 (Ala. Crim. App. 1982), sufficient to show that the petitioner is entitled to relief if those facts are true."
Ex parte Clisby, 501 So.2d 483, 485-86 (Ala. 1986).
The standards governing a postconviction petition under Rule 32, Ala. R. Crim. P., and a petition for the writ of error coram nobis are closely related. See, e.g., Ex parte A.D.R., 690 So.2d at 1209 ("Rule 32, Ala. R. Crim. P., incorporates the procedure for filing what was classified under prior practice as a petition for the writ of error coram nobis. See H. Maddox, Alabama Rules of Criminal Procedure, § 32.0 at 782 (1990)."). Thus, in evaluating whether W.B.S. has sufficiently pleaded his ineffective-assistance-of-counsel claim in this case we consider the caselaw governing such a claim raised in a postconviction petition under Rule 32, Ala. R. Crim. P.; that caselaw is well established.
" ' "In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) :
*145 " ' " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
" ' " 466 U.S. at 687, 104 S.Ct. at 2064.
" ' " 'The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances." ' Daniels v. State, 650 So.2d 544, 552 (Ala. Cr. App. 1994), cert. denied, [ 514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995) ], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. 'A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
" ' "The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). 'Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance." [ Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.' Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala. Cr. App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994) ; Luke v. State, 484 So.2d 531 (Ala. Cr. App. 1985). 'This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala. Cr. App. 1994).
" ' " 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action *146 "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
" ' " Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
" ' " 'Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [ Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
" ' " Daniels, 650 So.2d at 552." ' "
Sheffield v. State, 87 So.3d 607, 633-35 (Ala. Crim. App. 2010) (quoting Dobyne v. State, 805 So.2d 733, 742-43 (Ala. Crim. App. 2000), aff'd, 805 So.2d 763 (Ala. 2001) ; additional citations omitted).
As noted above, W.B.S. alleged that his trial counsel was ineffective because, he said, his trial counsel "made only a general motion for a judgment of acquittal at the close of the State's case." (C. 37.) In an attachment to his petition, as quoted above, W.B.S. elaborated upon this claim and made specific allegations as to how, in his view, the State failed to prove the element of forcible compulsion in his cases. W.B.S. further alleged specific facts indicating that, had counsel properly objected to this alleged failure to prove the element of forcible compulsion in his cases, there is a reasonable probability that the result of his proceedings would have been different. Under the circumstances of this case, those allegations are sufficient to entitle W.B.S. to an evidentiary hearing on his ineffective-assistance-of-counsel claim. See, e.g., Boatwright, 471 So.2d at 1259 ("Under the authorities, and without our ruling upon the merits of the allegations of the petition, the judgment of the Court of Criminal Appeals is reversed and this cause is remanded to that court with directions to remand the cause to the trial court for an evidentiary hearing on the matters contained in the petition.").
Accordingly, this case is remanded to the juvenile court for an evidentiary hearing on the ineffective-assistance-of-counsel claim raised in W.B.S.'s petition. On remand, the juvenile court shall take all necessary action to ensure that its findings of fact and any subsequent action be returned to this Court no later than 90 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.*
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

The rationale underpinning this Court's unpublished memorandum affirming W.B.S.'s delinquency adjudications had only one concurrence; the remaining four judges concurred in the result.

W.B.S. petitioned the Alabama Supreme Court for certiorari review of this Court's decision. The Alabama Supreme Court denied W.B.S.'s petition on September 18, 2015. See Ex parte W.B.S. (No. 1141220, Sept. 18, 2015), 192 So.3d 417 (Ala. 2015).

In his dissenting opinion, Judge Burke agreed with this Court's holding that Rule 32 was not applicable to collaterally attack a juvenile-delinquency adjudication and explained that he "would treat W.B.S.'s petition as a petition for extraordinary relief through a common-law writ, such as a writ of error coram nobis or a writ of certiorari." W.B.S., 192 So.3d at 426 (Burke, J., dissenting).

W.B.S. attached to his coram nobis petition this Court's unpublished memorandum affirming his juvenile-delinquency adjudications, his first Rule 32 petition, the juvenile court's order dismissing his Rule 32 petition, this Court's order transferring his case to the Etowah Circuit Court, the Etowah Circuit Court's order dismissing his Rule 32 petition, and this Court's opinion affirming the circuit court's decision.

As we explained in W.B.S., 192 So.3d at 420 : "W.B.S.'s only avenue for challenging his counsel's effectiveness would be through the filing of a common-law writ."

Note from the reporter of decisions: On August 4, 2017, on return to remand, the Court of Criminal Appeals dismissed the appeal, without opinion.